# Commonwealth *v.* Lenhart, Appellant.

*Criminal law—Conspiracy—Banks and banking—Evidence—Intention of parties.*

1. On the trial of an indictment for conspiracy against the cashier and depositor of a bank to defraud the bank, the good intention of the parties to repay the bank at the time the money was taken, is not a sufficient answer to evidence of the commonwealth tending to show an arrangement between the two defendants to conceal their operations to use large amounts of the money of the bank without compensation and by unlawful methods to prevent the state banking department from acquiring information of the true condition of the bank's business.

2. In such a case where evidence is introduced by the commonwealth to the effect that the cashier issued checks payable to other persons than his co-conspirator, although for the latter's use, the court may properly say to the jury that if the defendants used the checks in this form for the purpose of preventing other banks from knowing or learning the extent of the accused depositor's dealings with his own bank, the agreement was unlawful. The mere fact that in indorsing the names of the payees on

the checks did not, under the circumstances, constitute forgery, is immaterial.

*Criminal law—Conspiracy—Evidence—Co-conspirator.*

3. While it is proper on the trial of an indictment for conspiracy for the court to charge the jury that they should receive the testimony of a co-conspirator with caution, still there is no rule of law which forbids a conviction on the testimony of an accomplice alone. The appearance of the witness and his manner of testifying may so impress a jury as to satisfy them of the truth of his evidence.

*Criminal law—Charge of court—Assignments of error—Appeals—Bill of particulars.*

4. In reviewing the charge of a trial court a fragment of it is not to be judged without regard to the other parts, and where the charge taken as a whole correctly expresses the law appropriate to the questions involved, the judgment will not be reversed. Even where in a criminal case, the charge indicates a leaning towards the side of the commonwealth, that is not a sufficient ground for reversal where the charge as a whole contains a correct and adequate presentation of the law applicable to the facts which the testimony tended to establish; and even where a strong opinion on the evidence is expressed, it may not be erroneous when considered in connection with the other parts of the charge.

5. If a trial judge neglects to charge on some subject which counsel deems important, fairness to the judge requires that his attention should be called to it before the jury is sent out in order that the omission may be corrected.

6. Where a bill of particulars covers a particular transaction in a criminal prosecution but counsel deems it insufficient fully to explain the transaction, it is his duty to ask for a more specific bill of particulars.

Argued April 21, 1909. Appeal, No. 175, April T., 1909, by defendant, from judgment of Q. S. Washington Co., Feb. T., 1908, No. 18, on verdict of guilty in case of Commonwealth v. William L. Lenhart. Before Rice, P. J., Porter, Henderson, Morrison, Orlady and Head, JJ. Affirmed.

Indictment for conspiracy to defraud a bank. Before Taylor, J.

At the trial it appeared that the defendants were O. F. Piper, cashier of the People's Bank of California, Pa., and W. L. Lenhart, one of the depositors of the bank.

The facts are stated in the opinion of the Superior Court.

The commonwealth made the following offer:

Commonwealth offers to have exhibits "A–1" and "B–1" now shown witness identified by him, and have him explain where they were found, to whose order they are made payable and how indorsed and the amounts that they represent; to be followed by evidence that the person whose name is indorsed thereon received no money thereupon, that the money was paid to W. L. Lenhart, and that they do not appear on the books of the bank. This for the purpose of showing a corrupt understanding existing between W. L. Lenhart and O. F. Piper by reason of which his transactions with the bank were not to appear upon the books of the bank; for the further purpose of showing that in his transactions with the bank he used the name of M. L. Burd and the other persons in order that the magnitude of his transactions with the bank might not be known to the board of directors.

The evidence is objected to, first, for the reason that there is no proof nor offer to prove that O. F. Piper did not receive the full amount of the face value of these checks at the time the checks were issued, and no proof or offer to prove that they were issued at the request of the defendant, W. L. Lenhart; and third, there is no proof nor offer to prove that the People's Bank of California was defrauded out of a single penny on account of either of these checks; and generally as irrelevant and incompetent.

The Court: Objection overruled, offer admitted and bill sealed for defendant. [19]  *Answer:* "A–1," cashier's check dated May 31, 1907, $2,000.  "B–1," cashier's check dated May 22, 1907, $2,000.

" Q. Mr. McClain, do you have the total or aggregate amount of the cashier's checks made payable to M. L. Burd included in the exhibits you have read which did not appear upon the books of the bank?  A. There are seventy-six cashier's checks issued, but some of them are payable to others beside M. L. Burd; I don't have the total separated."

The commonwealth offers to prove by the witness on the stand that by a falsification of the books of the bank $1,345 was taken from the account of the East Pike Run school district, and of this amount a cashier's check for $800 was given

to W. L. Lenhart and his personal account credited with $545, making up the amount of the falsification of the East Pike Run school district's account. This for the purpose of showing a conspiracy between O. F. Piper and W. L. Lenhart by virtue of which Lenhart received the proceeds resulting from the falsification of the books.

The evidence is objected to on behalf of the defendant for the reason that there is no proof nor offer to prove that W. L. Lenhart ever had any knowledge that any money obtained by him from the People's Bank of California was taken from the account of the East Pike Run school district; second, for the reason that there is no evidence so far introduced which even tends to show a conspiracy between W. L. Lenhart and O. F. Piper to defraud the People's Bank out of any money whatever; third, for the reason that no notice of this item was furnished to the defendant by the commonwealth in its bill of particulars or supplemental bill of particulars; and fourth, as generally irrelevant and incompetent.

The district attorney states it is referred to in the indictment which was marked as a bill of particulars.

The Court: Do I understand counsel to say that this is included in one of the counts of the indictment against Piper?

Mr. Underwood: In the large indictment.

The Court: And which was marked for bill of particulars?

Mr. Underwood: For bill of particulars.

The Court: Objection overruled, offer admitted and bill sealed for defendant.

Mr Irwin: We would like to have that pointed out in the bill of particulars, your honor.

Mr. Acheson: It is not mentioned specifically in the bill of particulars.

Mr. Underwood: It is mentioned in the large indictment as one of the falsifications of the books, and that large indictment is marked for bill of particulars.

Mr. Irwin: There is no charge of falsification of the books against W. L. Lenhart now on trial.

Mr. Acheson: But the large indictment against O. F. Piper containing about 200 counts is marked in the tenth paragraph

or in one of the paragraphs of this bill of particulars, as a part of the bill of particulars, and that indictment charges the falsification of the books and false entries made by O. F. Piper.

Mr. Underwood: The twenty-fifth and twenty-sixth counts. (Show same to defendant's counsel.)

Mr. Underwood: Under the tenth paragraph of the bill of particulars, the defendant, W. L. Lenhart, having been notified as follows: "That pursuant to and in accordance with the said false, fraudulent and malicious combination, conspiracy, confederation and agreement, the said O. F. Piper did unlawfully, fraudulently and falsely make the false entries and do the divers other false, fraudulent and illegal acts, things and transactions enumerated and mentioned in the bill of particulars furnished in the case of the Commonwealth against O. F. Piper at No. 109, February Term, referring to the first 190 counts in the indictment against the said O. F. Piper at the said number and term, which said unlawful and fraudulent transactions were done with the knowledge and consent and by the aid and counsel of the said William L. Lenhart, for the purpose of falsifying the records of the said People's Bank of California, Pa., and concealing and covering up proof of the unlawful payment of large sums of money to him, the said William L. Lenhart, by the said O. F. Piper, cashier of said bank." Now, there is notice to them that he is claimed to be a party to every one of those transactions,—it is proposed to prove by the witness on the stand that the $1,345 mentioned in the twenty-fifth and twenty-sixth counts of the indictment against O. F. Piper, made part of the bill of particulars by paragraph 10 of the bill of particulars furnished W. L. Lenhart, became the property of the said W. L. Lenhart by a credit to his individual account of $545 and the issuing of a draft for $800, the balance of the amount, to the said W. L. Lenhart. This for the purpose of showing a conspiracy between O. F. Piper and W. L. Lenhart to defraud the People's Bank of California.

The evidence is objected to first, for the reason that there is no proof nor offer to prove that the People's Bank of California did not receive the said sum of $1,345 at the time that Lenhart's account was credited with $545 and that the $800 draft was

issued to him; second, there is no proof nor offer to prove that by means of the issuing to him of the $800 draft and the crediting of his account with $545 he, the said W. L. Lenhart, unlawfully obtained any money from the People's Bank of California; and third, for the reason that the evidence is not embraced in the bill of particulars furnished; while said bill of particulars refers to and attempts to make part of it the indictment against O. F. Piper, the twenty-fifth and twenty-sixth counts of that indictment do not allege that any credit was to the account of W. L. Lenhart nor that any draft was passed to him, to cover up which the said alleged false entries were made; and generally as irrelevant and incompetent.

The Court: Supposing they have shown that there was an unlawful combination—

Mr. Irwin: But they have not; and that is another objection we offer; and we submit there ought to be some evidence of that before this all goes before the jury, because if it goes into the jury box it is bound to make a lodgment there.

The Court: They have shown that there is something over 600 checks, a lot of drafts and other things,—dealings between Piper and Lenhart,—that did not go on the bank books at all.

Mr. Irwin: They have not shown that a single one of them was not paid.

The Court: Can you say that the court could not admit this testimony in view of what has already passed? The objection is overruled, the offer admitted and bill sealed for the defendant.

Check marked exhibit "E–3." Sheet from bank book marked exhibit "F–3."

Witness shown exhibits "T–2," "E–3" and "F–3."

" Q. Mr. McClain, the falsification in the column for individual deposits of $1,345 of date October 4, 1907, is on what book of the bank? A. That is on the general ledger. Q. And just explain what that falsification of the record was, the amount and from whose account taken? "

Offer asked for.

The commonwealth offers to have the witness explain from the general ledger from whose individual account on the individual ledger the $1,345 was abstracted.

Mr. Irwin: And that it was taken from the account of the East Pike Run school district?

Mr. Underwood: I think that is what it will show.

Mr. Irwin: Well, the offer ought to include that.

The evidence is objected to first, as irrelevant. and incompetent; second, there is no proof or offer to prove that W. L. Lenhart had any knowledge of the alleged illegal transaction; and third, there is no notice to the defendant in the commonwealth's. bill of particulars that that alleged false entry was made by transferring that amount from some other account in the bank; and generally as incompetent and irrelevant.

The Court: Objection overruled and offer admitted and bill sealed for the defendant. It is substantially the same offer as before. [20]

" Q. And just explain what that falsification of the record was, the amount and from whose account taken? A. The amount was charged in the individual ledger on the sheet of the East Pike Run Township School, $1,345, and deducted from their balance. This entry is not dated but follows another entry dated August 13, 1907, that was the last part of the transaction. I am starting in wrong, I think. On November 8, 1906, a draft on the People's National Bank of Pittsburg, for $800, was issued to W. L. Lenhart. This draft was not put through the work nor deducted from our balance,—or the People's Bank balance in Pittsburg. On November 9, 1906, the account of W. L. Lenhart was credited $545 to make good an overdraft of $515.71. This did not come through the daybook or regular book of a bank, consequently the books were out of balance, the $800 on the eighth and the $545 on November 9, 1906. On March 7, this amount was taken from the general ledger by decreasing the account called individual deposits, March 7. This amount was again restored to individual deposits by increasing that account on October 3, $1,345, and at the same time offsetting that by increasing the time loans $1,345. I might say the final resting place of the deduction was in the account of the East Pike Run school district, as their account at the time of closing was short $1,345 from the amount they should have had. Q. What is that, Mr. Piper?

A. That is a sheet from the individual ledger showing the account of the East Pike Run school district.   Q. And what falsification do you find of that account and of what date?"

This evidence is objected to for the reason that there is no notice in the bill of particulars of any falsification of the account of the East Pike Run school district.

The Court: Objection overruled and bill sealed for the defendant.

" A. It is a charge of $1,345 against the East Pike Run school district.   Q. And that was a falsification, was it?   A. It was. There was never no charge due them.   Q. And what was done with that money taken from the account, that $1,345?"

(Witness shown exhibit "T–2" and also exhibit "E–3".)

" A. On November 8, 1906, I issued to W. L. Lenhart a draft on the People's National Bank of Pittsburg for $800 on which he gave me a check for $800, and I was to hold the check up until he could tell me when to present it; the time never arrived on which he had money to meet it, or he never informed me of such a fact, and later I cashed some checks which made his account overdrawn, and I purported to give him a credit of $545 which I did on his individual account, and in May or June, or the time we straightened all this stuff up, among the notes he gave me was one for $1,345.   Q. When he gave you that note for $1,345 did you explain to him why it was necessary?   A. Yes, that was figured in; it was to cover the $800 check and $545 deposit or credit I had given him." [21]

Defendant presented these points:

3. If the jury find that William L. Lenhart borrowed the money from the bank in good faith, with the intention on his part to repay it, the verdict should be for the defendant.

Affirmed if the jury further find from all the evidence in the case that the money obtained by the said Lenhart from said bank through the cashier Piper, was procured by lawful methods on his part and that he had no knowledge, understanding or agreement previous to his procurement of it, or when he did procure the money of the cashier Piper's furnishing it to him by the use of unlawful means withheld from the

bank to its injury or the violation of the laws of the state banking department. [1]

4. If the jury find that O. F. Piper, cashier, loaned the money to William L. Lenhart in good faith, with the intention and understanding on the part of Piper that it should be repaid, the verdict should be for the defendant.

This point is affirmed if the jury further find from the evidence in the case that in the admitted dealings between the cashier Piper and the customer W. L. Lenhart they had not corruptly agreed together, or understood each other that the money the cashier furnished the customer, the said Lenhart, for which he applied was not furnished to the prejudice of the bank, or in violation of the banking laws. [2]

6. Before the jury can convict the defendant they must be satisfied from the evidence, beyond a reasonable doubt, that at the time the defendant, W. L. Lenhart, obtained the money from O. F. Piper that O. F. Piper in furnishing that money to William L. Lenhart intended to cheat and defraud the bank, and that William L. Lenhart knew that O. F. Piper in furnishing that money to him intended to cheat and defraud the bank. And they must further find that when William L. Lenhart received that money he received it with the intention of defrauding the bank, and that O. F. Piper at the time knew that William L. Lenhart intended to defraud the bank.

Before the jury can convict they must find from all the evidence in the case that there was either an agreement, or a course of dealing between the parties charged known to each other with the use of the bank's money to do an unlawful thing or to do a lawful thing in an unlawful manner; with this statement the point is affirmed. [3]

7. That the testimony of O. F. Piper, he being indicted as an accomplice and having plead guilty to the embezzlement of the funds of the bank and having falsified the books of the bank, should be received with caution by the jury.

If an accomplice testifies truthfully, as you believe, you have the right to consider his testimony carefully. Affirmed. [4]

2. That the supplying or writing of the name of M. L. Burd or H. C. Fox on checks made to their order, but belonging to

William L. Lenhart, without any intention to defraud or injure the said M. L. Burd or H. C. Fox, they having no ownership or interest in the said check, where said checks were issued by O. F. Piper knowing that they were to the credit of W. L. Lenhart, and that M. L. Burd or H. C. Fox had no interest whatever in the funds, does not constitute forgery.

Affirmed, but if the jury find from all the evidence in the case that the use of said names as admitted was agreed between Piper the cashier and W. L. Lenhart to be used for the purpose of preventing banks, including the People's Bank of California, Pa., from knowing or learning the extent of Lenhart's dealings with said bank or banks for the purpose and to the injury of the said People's Bank of California, Pa., or in violation of the state banking department laws, it was an unlawful agreement and for a corrupt purpose. [5]

The court charged in part as follows:

[In other words, we will tell this jury, that if they find Lenhart and Piper, by an agreement expressed or implied, used the money of this bank and kept their transactions off the books, in secret pouches or places hidden from the directors, then that was an understanding and agreement between them that was a conspiracy, by an agreement to do an unlawful thing, and the offense, the gist of the offense of conspiracy, would then be shown in a corrupt combination between Lenhart and Piper.] [6]

Verdict of guilty, upon which the defendant Lenhart was sentenced to pay a fine of $500 and undergo an imprisonment of two years.

*Errors assigned* among others were (1–17) various instructions; (18) that the charge was inadequate; (19–21) rulings on evidence, quoting the bill of exceptions.

*R. W. Irwin* and *John M. Freeman*, with them *Jas. A. Wiley*, for appellant.—Before the jury would be warranted in convicting the defendant, they would have to find that Piper and Lenhart had a common purpose supported by a concerted action to defraud the People's Bank, that each of them intended to defraud the bank, and that each of them understood that the

other intended to defraud the bank: Ballantine v. Cummings, 220 Pa. 621.

It is competent for a jury to convict on the testimony of an accomplice alone. But the source of this testimony is so corrupt that it is deemed unsafe to rely upon, and the court always considers it their duty to advise a jury to acquit, where there is no evidence corroborative of the accomplice: Watson v. Com., 95 Pa. 418; Com. v. Craig, 19 Pa. Superior Ct. 81.

What was done by Lenhart and Piper under the testimony was wholly consistent with mere irregular and careless business methods without any criminal intent whatever.

The following cases we think show conclusively that the court erred in taking this question of criminal intent from the jury: People v. Flack, 125 N. Y. 324 (11 L. R. A. 807) (26 N. E. Repr. 267); People v. Molineux, 168 N. Y. 264 (61 N. E. Repr. 286); Wood v. State, 47 N. J. L. 461 (1 Atl. Repr. 509); Smith v. Kinne, 19 Vermont, 564; Riley v. State, 16 Conn. 47; Com. v. Tack, 1 Brewster, 511; Com. v. Ridgway, 2 Ash. 247.

*Owen C. Underwood*, with him *C. L. V. Acheson*, district attorney, *T. H. W. Fergus*, assistant district attorney, and *R. H. Meloy*, for appellee.—The court could not possibly have affirmed the third and fourth points without qualification unless he said in effect to the jury, that if Piper and Lenhart had a hope or belief that they would some day be able to straighten out the tangle and pay back the money, they were not guilty of conspiracy: Ballantine v. Cummings, 220 Pa. 621; Com. v. McMurray, 198 Pa. 51.

Although parts of a charge when taken separately may seem to be erroneous, and indicate a leaning to one side or the other, there is yet no error if taken as a whole the questions at issue are left to the jury: Reese v. Reese, 90 Pa. 89; Com. v. Mika, 171 Pa. 273; Johnston v. Com., 85 Pa. 54.

Although the uncorroborated testimony of an accomplice should be received with caution, yet there is no rule of law forbidding a conviction upon his evidence alone.

Com. v. Sayars, 21 Pa. Superior Ct. 75; Com. v. Craig, 19 Pa. Superior Ct. 81; Cox v. Com., 125 Pa. 94.

OPINION BY HENDERSON, J., October 11, 1909:

The appellant was indicted with O. F. Piper for conspiracy to cheat and defraud the People's Bank of California, Pa., by unlawfully and fraudulently obtaining divers large sums of money therefrom. Piper having pleaded nolo contendere the case went to trial against Lenhart alone. The evidence of the commonwealth showed that the appellant had obtained from the bank by transactions extending through a period of about two years sums of money amounting in the aggregate to about $69,000 for which no adequate security was given and which was lost to the bank; that no record of these transactions was regularly entered on the books of the bank and that the directors or officers of the bank other than Piper were not informed that the money was so obtained; that numerous checks of Piper, the cashier, were issued to a fictitious person on the appellant's account; that a course of "kiting" checks was engaged in by the appellant through the People's Bank; that the books of the bank were falsified by Piper; that the appellant caused to be printed a simulated letter head of the state banking department to be used by Piper in exhibiting to the directors of the bank alleged letters from that department; that the appellant knew that the books of the bank were falsified and that the bank was not receiving any consideration for its funds involved by the cashier's checks and the appellant's kiting operations. The defendant made a general denial of any intention to defraud or knowledge that the books of the bank had been altered or that he knew what use was to be made of the imitated letter heads of the banking department, and contended that his liability to the bank did not exceed about $29,000. The defendant's first, third, fourth and sixth points present in different forms the first proposition for which the learned counsel for the appellant contend. That was, as stated in the sixth point, that in order to justify a conviction the jury must be satisfied that at the time the defendant obtained the money from Piper he intended to defraud the bank and that Piper in furnishing the money also intended to defraud the bank. This proposition was affirmed with the qualification in substance that if the money was knowingly obtained by unlawful means not communicated to the

bank or in violation of the laws of the state banking department the defendant might be convicted. The answers to these points are made the subject of the first, second and third assignments of error. The argument for the appellant is that if he had an intention to repay when the money was obtained and Piper had an honest belief that the defendant would repay, the charge of conspiracy could not be sustained, but the commonwealth's case does not depend on its ability to show that at the time each sum of money was obtained from the bank there was a purpose of the cashier and the defendant to cheat. The evidence shows clearly that much of the prejudice to the bank resulted from the manner in which the business was transacted by the defendant and the cashier, the effect of which was to keep the directors of the bank in ignorance of the existence of the loans and thereby deprive them of an opportunity to collect the indebtedness before it had grown to the large proportions which it subsequently assumed and while the defendant had some property within reach of his creditors. The good intention of the parties at the time the money was taken from the bank is not a sufficient answer to the evidence of the commonwealth tending to show an arrangement between the cashier and the appellant to conceal their operations to use large amounts of the money of the bank without compensation and by unlawful methods to prevent the state banking department from acquiring information of the true condition of the bank's business. It is not pretended that there was not an understanding and intention on the part of Piper and the defendant to adopt the method used by the latter in obtaining the money and postponing payment thereof, and if the things were done which are charged in the commonwealth's evidence an original intention on the part of the defendant to pay the money received does not relieve the defendant from answering the accusation. A combination to defraud could have been entered into at a later stage of the business, and the commonwealth's evidence tends to show that such was the fact.

Piper was called as a witness for the commonwealth. An objection is made in the fourth assignment of error that the answer of the court to the defendant's seventh point should

have been an affirmance without qualification. The point asked the instruction that the jury should receive the testimony of an accomplice with caution. This point was affirmed with the qualification that if the jury believed the testimony of an accomplice they were justified in considering it carefully. There is no rule of law which forbids a conviction on the testimony of an accomplice, alone. The appearance of the witness and his manner of testifying may so impress a jury as to satisfy them of the truth of his evidence: Cox v. Com., 125 Pa. 94; Com. v. Craig, 19 Pa. Superior Ct. 81. But the instruction on the subject did not end with the answer to the point. In that part of the charge set forth in the seventeenth assignment the jury was told that they must receive the testimony of an accomplice with caution throughout and with great caution where it is not corroborated in any instance and even where corroborated that caution must still be observed. The answer to the point and the instruction of the court in the general charge set forth the law clearly and correctly on that subject.

Part of the commonwealth's case consisted of evidence that cashier's checks were issued by Piper payable to M. L. Burd or to H. C. Fox, which were for the use of the appellant, the payee having no interest whatever in the fund to be produced by the checks. The defendant's second point asked the court to say that the writing of the name of said Burd or Fox on the checks made to their order but belonging in fact to the defendant did not constitute forgery. This point was affirmed with the further instruction that if Piper and the appellant agreed to use the checks in the name of Burd or Fox for the purpose of preventing banks, including the People's Bank of California, from knowing or learning the extent of the defendant's dealings with that bank to the injury of the bank, the agreement was unlawful. This is made the subject of the fifth assignment of error. The point might well have been refused, for there was no allegation on the part of the commonwealth that the indorsements on these checks were forgeries. It was not material to the prosecution whether the names of the payees were indorsed on the checks by them or by Piper or the defendant. The transactions relating to these checks were introduced to show the method by

which some of the funds of the bank were obtained and to show the understanding between Piper and the defendant that that was to be done in a way to mislead and to keep from the knowledge of the directors of the bank or the officers of other banks the extent of the defendant's operations. Piper had testified that the object of using the name of Miss Burd in the checks was to keep the name of the defendant from going through the Mellon National Bank of Pittsburg or the First National Bank of California because he, Piper, had objected to so many of the defendant's checks passing through their bank to other banks. It was entirely appropriate, therefore, for the court to tell the jury in answering the point what the bearing of the evidence was.

The sixth assignment relates to a statement of the trial judge to the counsel indicating what his instruction to the jury would be in regard to the evidence relating to an understanding that the money of the bank should be used and the transactions not entered on the books of the bank. The criticism made on this remark by the appellant is that there was no evidence that the defendant's transactions with the bank were hidden from the directors, but the testimony of Piper is quite to the contrary and it is corroborated by the testimony of Miss Burd in material parts. The evidence relating to the imitated letter heads of the banking department was also pertinent in that connection. Moreover, the language excepted to was not addressed to the jury and is not contained in the charge of the court. It was the court's announcement to the counsel of the view he entertained on that part of the evidence. The assignment cannot, therefore, be sustained.

Assignments seven to seventeen, inclusive, bring up portions of the charge for review. The criticisms made thereon are creditable to the diligence and acuteness of the learned counsel for the appellant, but we are not persuaded that any one of them presents an error for which the case should be reversed. It is a very familiar rule that in reviewing the charge of a trial court a fragment of it is not to be judged without regard to the other parts, and where the charge taken as a whole correctly expresses the law appropriate to the questions involved the

judgment will not be reversed. Even where it indicates a leaning toward the side of the commonwealth that is not a sufficient ground for reversal where the charge as a whole contains a correct and adequate presentation of the law applicable to the facts which the testimony tended to establish; and even when a strong opinion on the evidence is expressed as in Johnston v. Com., 85 Pa. 54, that is held not to be erroneous when considered in connection with the other parts of the charge. The argument that the language of the court as set forth in the seventh, eighth and tenth assignments takes out of the case the question of intent loses its force when the whole charge is considered. The defendant's first point called for an instruction that the gist of the offense of conspiracy is an intention on the part of the defendant to commit a crime, and that unless the jury found that both of the defendants intended when the loans were made to defraud the bank the verdict must be for the defendant. This point was affirmed by the court. The jury was thus clearly told that the commonwealth must show that the parties indicted intended to commit the fraud charged. The jury was further instructed in different parts of the charge that they must determine from the evidence whether there was an unlawful combination formed between the appellant and Piper to commit the offense charged in the indictment. We think there can be no doubt that the jury understood very clearly that the burden was on the commonwealth to show not only that the defendant got the money from the bank, but that he and Piper intended to commit a fraud against it. It is carrying criticism to an extreme limit to hold that the portion of the charge set forth in the ninth assignment is a recital of the testimony showing what Lenhart and Piper had done. The court in the portion of the charge immediately preceding the part here objected to drew the distinction between a corrupt combination and the overt act tending to show it, and then used the language complained of. It was evidently intended as an illustration to show how an act lawful in itself might be committed in an unlawful manner and thereby subject the perpetrators to criminal responsibility. In view of what the record showed and Piper testified to no harm resulted to the appellant from that part of

the charge contained in the thirteenth assignment, and if the trial judge inadvertently used the word "confessed" in stating the effect of the plea of nolo contendere his attention should have been called to that if it was deemed a matter of importance. Piper testified to a state of facts which amounted to a confession of guilt of the offense charged, and the possibility that the jury may have been misled by the language used is most remote.

The references of the court to the claims of the commonwealth discussed under the fourteenth, fifteenth, and sixteenth assignments are not in violation of any rule of law and were justified by the commonwealth's evidence. We do not understand them to be the assertion of conclusions established by the evidence but references to the contention of the commonwealth that the evidence did prove what was claimed.

The final objection to the charge is that it was unfair, inadequate and prejudicial to the defendant. We have examined it carefully in the light of this objection, but are not convinced that there is any support for the complaint. It covers the case with sufficient fullness and directs the attention of the jury to the principal features of the evidence, and near the conclusion contains the following instruction: "All that means is that you should proceed with caution and care and deliberation and consider all the evidence in the case, taking into account the denial that the defendant makes of any wrongdoing here, and the corroborative testimony of his side of the case, claiming that he was simply banking in the regular way and was not chargeable with any irregularities that were committed by Mr. Piper who was the cashier of the bank, in the bank, by which the bank lost its money, if it did, through him, when he was not a party—if he was not—to any unlawful combination or agreement with the cashier to do the unlawful acts which evidently did result in this bank being closed by reason of losing its assets." If more frequent reference was made to the evidence introduced by the commonwealth it was because the case for the prosecution involved many facts established by books, documents and oral evidence, while the case for the appellant was largely made up of his own testimony, but we do not find anything in

the charge to show an unfair presentation of the appellant's case. Complaint is made that the court omitted to call attention to parts of the evidence favorable to the defendant, but this may be said also with reference to the evidence offered for the prosecution. The evidence was voluminous, and the trial continued for several days. If the trial judge neglected to charge on some subject which was deemed important, fairness required that his attention should be called to it before the jury was sent out in order that the omission might be corrected. We do not regard the charge as either unfair or inadequate for the question of the existence of the alleged conspiracy, and the intention of the parties indicted was clearly and sufficiently brought to the attention of the jury.

The argument in support of the nineteenth assignment of error assumes that the checks referred to were offered for the purpose of showing that the bank was defrauded of the amount of money expressed therein, but this was not the purpose stated by the commonwealth when the offer was made. It may be that as an independent fact the evidence was not sufficient to make out a case, but it was clearly competent in support of the charge that the appellant and Piper had entered into a fraudulent arrangement to permit Lenhart to use the money of the bank. The transaction was irregular in form, was for the benefit of Lenhart and was not made a subject of record in the bank. It tended to sustain the complaint that a conspiracy existed.

Exception is taken in the twentieth and twenty-first assignments of error to the action of the court in admitting evidence not sufficiently set forth in the bill of particulars and especially that the evidence relating to the Pike Run School District account was introduced without notice. The bill of particulars put the defendant on notice of the matters charged against Piper in the indictment against him individually at No. 109, February Term, the twenty-fifth and twenty-sixth counts in which indictment related to the transaction proved against the defendant. That notice informed the defendant that the commonwealth would show that on October 4, 1907, Piper entered in the individual deposits account of the ledger of the People's Bank the total amount of individual deposits as

being $136,189.18, whereas the true amount was $134,844.18; that this entry was made with intent to defraud the bank and with the knowledge and consent of the appellant and for his benefit. The evidence offered was to show that the amount of the fraudulent entry made by Piper was deducted from the account of the school district and that this amount was given to the appellant in the form of a draft for $800 on the People's National Bank of Pittsburg and a credit on an overdraft of $515.71. The bill of particulars covered this transaction and if it did not sufficiently explain the method by which the money was obtained it was the duty of the defendant to ask for a more specific bill of particulars which the court would have granted. The remaining specifications of error do not require special notice. We are not satisfied that the action of the court was erroneous with respect to any of the matters complained of.

The judgment is affirmed and it is ordered that the defendant appear in the court below there to be committed to serve that part of his sentence which had not been undergone at the time this appeal was made a supersedeas.