## Johnston *versus* The Commonwealth.

1. To obtain admission to a dwelling-house at night, with the intent to commit a felony, by means of artifice or fraud, or upon a pretence of business or social intercourse, is a constructive breaking, and will sustain an indictment charging burglary by *breaking* and *entering*.

2. In commenting upon the evidence relating to the charge of entering without breaking, under the third count of the indictment, the court said, "The Commonwealth claims that evidence can establish nothing if this evidence will not establish the facts alleged in the third count, and I cannot, for my part, see how the jury can hesitate a moment to convict the prisoner on the third count." *Held*, that although this was certainly a strong expression of opinion, yet taken in connection with the entire charge, it did not amount to a binding instruction, and under the facts of this case was not erroneous.

3. The court sentenced the prisoner upon the second count of the indictment, which charged a higher grade of crime, to six years and four months imprisonment, and upon the third count, which charged a lessor crime, to three years and ten months, both sentences to take effect from the same date; *Held*, that this was a technical error, and that the sentence imposing the shorter term should be reversed.

June 20th 1877.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Oyer and Terminer of *Franklin county*: Of May Term 1877, No. 190.

Indictment of Ralph L. Rolland and B. Johnston, for burglary and entering with intent to steal.

The indictment contained three counts.   The first two charged the defendant with having committed a burglary in the dwelling-house of George R. Messersmith, on the night of the 24th day of March 1876.   The third count was founded on the 2d section of the Act of 23d of April 1863, Purd. Dig. 353, Pamph. L. 195, and charged the defendant with having on that night entered the house of Mr. Messersmith with intent to commit a felony therein.

The real estate was the property of the National Bank of Chambersburg.   Mr. Messersmith was the cashier of the bank, and on the night in question, was living in the banking-house with his family and servants.

This case was submitted to the Supreme Court on a former writ of error and reversed, a report of which will be found in 1 Norris 306, where the evidence is set forth more in detail.   On this second trial, Johnston pleaded "not guilty" and was separately tried.

It appeared at the trial, that Johnston and Rolland, about 8 o'clock of the night of the 24th of March 1876, went to the front door of Mr. Messersmith's residence and rang the bell.   The door was opened by Mr. Kindline, a brother-in-law of Messersmith, and a member of his household.   Rolland inquired of Kindline if Messersmith was in, and being informed that he was not, expressed regret and introduced Johnston as his friend from New

[Johnston *v.* Commonwealth.]

York, who had some business with Messersmith, and then remarked that perhaps they would call back later in the evening. They came back about twenty minutes afterwards, again rang the bell, which was answered by Kindline, who, opening the door, invited them to walk in and conducted them through the hall and dining-room into the office of Messersmith in the rear of and adjoining the banking-room. When they were ushered into the presence of Messersmith by Kindline he invited them to be seated, and after a friendly conversation of about half an hour, they made a violent assault upon Messersmith with a view of silencing him, so that they could consummate their intended purpose of robbing the bank. Messersmith made a desperate resistance and an alarm was given which frustrated their scheme. Rolland was captured in the yard of the bank building and Johnston about twenty miles from Chambersburg. Rolland and his wife had lived at a hotel in Chambersburg for some months previous to the attempted robbery, and by their mode of life and genteel manners had established relations of confidence and intimacy with many persons of the town, among them Messersmith. The mode of obtaining admission to the bank in order to carry out their scheme is fully set forth in the testimony of Mr. Kindline, as detailed in the opinion of this court.

The following points were presented by the defendant, to which are appended the answers of the court, Rowe, P. J.,

3. If the jury believe from the evidence, that on the night of the 24th of March last, Rolland and Johnston went to Messersmith's dwelling and rang the door-bell, and Kindline, a brother-in-law of Messersmith, and a member of his household, opened the door, and recognising Rolland as a friend and acquaintance of Messersmith, invited him and Johnston to walk into the house, and that this invitation was then declined; and if the jury further believe, that after this invitation was given, Rolland inquired of Kindline if Messersmith was in, and upon being told that he was not, introduced Johnston to Kindline, remarking that he had some business to transact with Messersmith, and that perhaps they would call again; still all these facts, taken together, if believed by the jury, do not constitute such a fraud or trick on the part of Rolland and Johnston as would make the entry into the house, at that time, or at a subsequent time, on the same night, a constructive breaking.

Ans. "I affirm the point, and answer that the facts therein set forth would not, in and of themselves, constitute a constructive breaking. I more readily affirm this point because Kindline testified that he invited them in when they first came, before any pretence of business, and that the pretence of business had no influence whatever upon him. In view of Kindline's whole evidence it is clear that the pretence of business, or anything that was said on the occasion of the first call that night, was not the means by which the defendant obtained admission to the house.

But a fraud or trick must not only be perpetrated for the purpose of gaining admission, but it must be the means by which the house was entered. I instruct you then, generally, that what occurred on the evening of the 24th of March, before the entrance into the house, did not amount of itself to a constructive breaking, because the Commonwealth's evidence shows it was not the means of obtaining admission. This answer will be fully understood when we shall have answered the defendant's next point."

4. If the jury believe from the evidence, that Rolland was a friend and acquaintance of Messersmith, and that Kindline knew this, and admitted him and Johnston into Messersmith's dwelling, on the night of the 24th of March, wholly on the strength of this friendship and acquaintance, and not on account of the pretence of business, if such pretence was made, then the entry of Rolland and Johnston was not a constructive breaking, and there can be no conviction of the prisoner for burglary.

Ans. "If there is not in this case any other evidence of fraud or trick than the pretence of business that night, when Kindline opened the door, this point would have to be affirmed, because that pretence would not be the means of admission, and I have already said, that the fraud or trick must have procured the entrance.

"But to affirm this point in this manner would be to present an inadequate view of the law of constructive breaking, as it arises on the facts of the case. The Supreme Court say, 'it is established by numerous authorities that there may be a constructive breaking. This may be done by an act in fraud of the law, or by fraud not carried on under cloak of legal process.' And again, 'that a trick and fraud by means of which admission is obtained to the house is a constructive breaking.' And they have decided that the entrance need not follow immediately upon the trick, but it is sufficient if the entrance is referable to a previous trick intended to accomplish that result; that if fraud and artifice are used at a prior time for the purpose of gaining admission with intent to commit a felony, and the call which resulted in the admission is part of the same transaction, in pursuance of such previously formed design, then the entrance so effected by the previous fraud is a constructive breaking. Such I understand to be the principle of the decision.

"I instruct you, then, that if the calls made on the night of the attempt on the bank were in pursuance of and part of a series of frauds and tricks perpetrated by Rolland for the purpose of gaining admission to the bank, and the entry was the last link of a chain of fraudulent artifices intended to effect such entry, and without which such entry could not have been made, and that admission was in fact obtained by means of the whole system of fraud practised by the parties who then gained admission, this would be a

constructive breaking. It would be an entry obtained by trick and fraud, only the fraud does not consist in a single act or transaction, but in a series of acts all tending to a common end.

" The Supreme Court says : ' If admission was obtained by pretence of business, and that was a fraud, it is enough.' But if this pretence was only part of a scheme to gain admission, of course the whole scheme would be sufficient, else a part would be greater than the whole. But the pretence of business may not itself have succeeded and been the means of admission, because the artifices used may have rendered that part of the scheme not necessary to admission. If, however, the whole scheme of fraud worked its purpose in putting the owner of the house off his guard, and in making him ready to admit the contrivers of the fraud when they presented themselves, and they presented themselves, continuing to use their artifices, and by this means gained admission to the house, it would be a constructive breaking.

" If you believe that, long before the 24th of March 1876, Rolland had conceived the idea of entering the Bank of Chambersburg with intent to rob or steal, and concocted a plan by which he might effect such purpose ; that he cultivated the acquaintance of the cashier and placed himself on as familiar terms as he could with him and his family, and began to talk to him of the buying of farms, and finally stated that he had a friend whom he wished to have come to Chambersburg to reside, and spoke of the Stouffer farm and thought it was too small, and on the night in question presented himself with a friend, who he stated had some business with the cashier ; and if you believe this was false and fraudulent, and intended to obtain admission to the house, and that it was by means of this that Rolland and Johnston did in fact obtain admission into the house, then this was such a fraud as amounted to a constructive breaking. If Rolland, by frauds and tricks and artifices, deceived the cashier, and induced him to believe that he was concerned to buy a farm for a friend, and that if he would call at his house with such a friend it would be for that purpose, and that it was thus that he was received into the house and the whole household was so deceived, and Kindline opened the door under the influence of Rolland's deceptions as to his true character and purposes, it was a constructive breaking."

5. In order to convict the prisoner of burglary, the entrance of Rolland and him into the house must have been procured by a trick or a fraud ; and if the jury believe from the evidence that Kindline would have admitted them without any trick or pretence of business, and that their entrance was obtained not by such means, but because of Kindline's acquaintance with Rolland and his knowledge of the friendship between him and Messersmith, then the entry of Rolland and Johnston was not burglarious or a constructive breaking, and the prisoner cannot be convicted of burglary.

Ans. " I affirm this point, unless you believe that such acquaintance of Kindline and friendship of Messersmith were procured by fraud and trick and as a means of entry, as I have instructed you in the preceding point."

6. If the jury believe from the evidence that there was a pretence made by Rolland of business with Messersmith on the occasion of the first call, as testified to by Kindline, and no entry was then made, and that about twenty minutes afterwards, without any pretence of business, Kindline admitted Rolland and Johnston, and that he did so wholly uninfluenced by and without regard to the previous pretence of business, then the entry of Rolland and Johnston was not burglarious or a constructive breaking, and the prisoner cannot be convicted of burglary.

Ans. " This point, relating as it does only to the pretence of business on the night of the 24th of March, is affirmed. I have said that what occurred that night would not constitute a breaking ; but that if you find it to be only part of a scheme of fraud, a series of artifices, and that such scheme of fraud, the total of all the artifices used, was the means of obtaining admission, it would be constructive breaking. There is no burglary in this case, unless there was constructive breaking by fraud, and there was no such fraud at the time of the entry as by itself would make constructive breaking ; but there is evidence of fraudulent practices by Rolland running over a considerable period of time, and it is for you to say whether the entry was effected by the whole of such practices, continuing down to the time of entry. If, notwithstanding you should find such acts and practices as I have referred to, you should be of the opinion that they did not procure the admission, but that it was the genteel manners and agreeable conversation of Rolland that did it, and not at all the practices, then it would not be a constructive breaking."

The court, in their general charge, said, " A question then arises, whether, if the call at Messersmith's house, when they obtained admission, was with the same design and part of the same transaction with the previous call on the same evening, and if that previous call was for the purpose of gaining admittance by fraud and artifice, namely, under pretence of business, with intent to commit a felony in the house ; and if these acts and this pretence of business were part of a larger scheme of fraud devised by Rolland and carried on for a long time, with the design of deceiving the cashier of the bank, as to his true character and purposes, and of thus securing his confidence and that of the members of his family, with the purpose and object, by this means, ultimately to obtain admission to the house of the cashier and steal the moneys of the bank ; and the sum total of the fraudulent practices was the means whereby admission was obtained to the house, though the last trick of the series was ineffectual because unnecessary, whether an admission so procured

would be a constructive breaking, and I instruct you that it would be such.

" If Johnston, the prisoner here, was the man that entered the bank with Rolland, and the calls that night were the last steps in the fraud used to procure entrance, then Johnston is responsible for all that Rolland did to gain entrance, for his every falsehood and device directed to this object. And the tricks played on Messersmith, if through him they affected Kindline, would be the same as if practised on Kindline himself. There is no difficulty on this score.

" Would Kindline have admitted these two men into the bank building that night if he had not learned in Messersmith's family to regard Rolland as an acquaintance of Messersmith, held by him in estimation? If he would not, then their admission is to be attributed to Messersmith's opinion of the character and purposes of Rolland. And if he (Messersmith) believed Rolland to be an honest man, contemplating the purchase of a farm and with like objects in view, and that his purpose in coming to his house was honest and to facilitate such objects, when in fact he was a villain conspiring to rob the bank and coming to Messersmith's house for that purpose; and if Messersmith's belief was produced by the fraud, artifices and tricks of Rolland, intended to deceive him in relation to Rolland's true character and purposes, and thus to enable him to gain admittance to the house in the execution of his design to rob it, then it was the fraud of Rolland that induced Kindline to open the door.

" It is claimed by the Commonwealth that the testimony of Messersmith and Kindline shows that Rolland's whole intercourse with Messersmith from the beginning was one continuous fraud and deception; that the pretence that he had packages of valuables that needed to be kept securely in bank was a trick; and the pretence that he was interested in farms in the vicinity as a possible purchaser for himself or his friends; and the pretence that he had friends whom he wished to settle at Chambersburg were tricks; and that this scheme of deceit was kept up until the evening of the attempt on the bank and practised at the first call of Rolland and Johnston in the pretence that the call was on business. Messersmith says he was not warned as to Rolland's true character, but heard doubts about him, and the Commonwealth may argue that he was prevented from making inquiry by these alleged deceptions and artifices of Rolland.

" The Commonwealth insists that it was this fraud and artifice of Rolland in its totality which induced Kindline to let him and Johnston in.

" But the defendant's counsel have endeavored to point out a state of intimacy between Rolland on the one side and Messersmith, and to show that the latter was attracted by the genteel manners and cultivated conversation of Rolland, and that it was these that

[Johnston *v.* Commonwealth.]

opened the door to him and not any fraud or trick practised to that end.    If the entry is to be referred to such reasons of course it was not a constructive breaking.    If it is to be referred to the fraud and trick continued and practised up to the admission on the night in question, it would be a constructive breaking."

In referring to the charge of entering without breaking, under the third count of the indictment, the court, after commenting upon the evidence, said : " The Commonwealth claims that evidence can establish nothing, if this evidence will not establish the facts alleged in the third count, and I cannot for my part see how the jury can hesitate a moment to convict the prisoner at the bar on the third count."

The verdict of the jury was not guilty of the burglary charged in the first count of the indictment, but guilty of the felony and burglary charged in the second count, and guilty of the felony in entering the dwelling-house with intent feloniously to steal charged in the third count.

A motion for a new trial was overruled on the 12th of December 1876, and on that day the court sentenced the prisoner, under the second count, to imprisonment in solitary confinement for six years and four months from the 12th of December 1876, and under the third count to an imprisonment in solitary confinement, at labor, for three years and ten months, to commence from the same date, 12th of December 1876.

Defendant took this writ, the errors assigned being from one to five inclusive, the answers to defendant's points, and that portion of the charge bearing thereon ; sixth, that portion of the charge upon the evidence under the third count ; and seventh, the sentence of the court.

*J. McDowell Sharpe* and *Duncan & McGowan*, for plaintiff in error.—The evidence showed conclusively that the pretence of business did not influence Kindline to admit Rolland and Johnston into the house.    He testified that he would have unhesitatingly admitted them without any such pretence, and that when he did admit them at the second call, it was without any thought of what occurred at the first call.    In considering the question of constructive breaking, the occurrences at the first call can be of no value in its determination.    Had there been no pretence of business made on the night in question, and Rolland and Johnston had obtained admission solely on the ground of their acquaintance with Kindline and Messersmith, would their entry have been a constructive breaking ?    To answer affirmatively would be to give the doctrine of constructive breaking a bolder sweep than any precedent will justify.    We contend, therefore, that the pretence of business was wholly without influence in gaining admission to the house, and that there was no connection established by the evidence between the previous

[Johnston v. Commonwealth.]

conduct of Rolland in his intercourse with Messersmith and the alleged pretence of business; nothing to show that such pretence was any part of a previously-arranged scheme of Rolland to rob the bank; that it was the culmination of the fraudulent practices directed against Messersmith.

The instruction contained in the sixth assignment took away from the jury all consideration of the evidence. It assumed the credibility of the Commonwealth's witnesses, and excluded the jury from every other hypothesis except that of the prisoner's guilt. That such finding or one-sided construction upon the facts is ground for reversal in a civil action, is sustained by abundant authority; and how much more cause for reversal should it be in a criminal prosecution where the prisoner is charged with a high felony : Strohl v. Levan, 3 Wright 177; Wenrich & Co. v. Heffner, 2 Id. 207; Kester v. Miller, 1 Casey 481; Rhodes v. Commonwealth, 12 Wright 396; Lane v. Commonwealth, 9 P. F. Smith 372.

The court erred in passing a double sentence on the prisoner, both sentences to be computed from the same day and to run concurrently.

*O. C. Bowers*, District Attorney, and *Kennedy & Stewart*, for the Commonwealth.—To make pretence of business, and thereby gain admission to commit a felony, is burglary, so decided by this court in this very case. To make pretence of social, friendly intercourse, and thereby gain admission, in order to commit a felony, must be adjudged the same. By what rule can the one be distinguished from the other? It certainly can make no difference that in the one case the pretence is expressed by words, and in the other by silent conduct; for the one may be just as effective as the other; and it is easy to conceive of cases in which the latter might be the more misleading and deceptive. The false pretence constitutes the trick, and if it be the means whereby the entrance is effected, it matters not how it was practised.

So that, standing alone, unaffected by Rolland's previous artifices, we assert that Johnston was guilty of constructive breaking. It was by a trick practised by himself that he gained admission to the bank. Judged by the severest test that the learned counsel for the prisoner can suggest, his guilt is established, for the artifice was both apparently and expressly for getting the fastening removed, whereby to gain admittance without breaking it, and so defraud the law of its justice by an evasion; and further, the entry was made immediately after the fastening was removed. Thus we have all the requisites fulfilled.

What we relied upon to establish constructive fraud in this case, under the instructions of the court, was the whole series of fraudulent practices, ending with the opening of the bank-door; what occurred after that can help only in making more clear and manifest

[Johnston *v.* Commonwealth.]

the whole scheme as devised.    The operative fraud was Rolland gaining the confidence of Messersmith and his family, by deceit, tricks and misrepresentations, to such an extent that the house of the latter would be opened, without question or suspicion, to him and his confederate, when their plans should be ripe, and so it was left to the jury, to say whether such deceit, tricks and misrepresentations were practised, whether they were practised for the purpose of acquiring the confidence of Messersmith and his household, and whether this intimacy was for the purpose of gaining admission to the house by an evasion of the law.

Mr. Justice PAXSON delivered the opinion of the court, October 1st 1877.

The assignments of error from the first to the fifth inclusive, refer to the same question and may be considered together.    They allege error in the application by the court below of the doctrine of constructive breaking to the facts of this case.    We may remark, in passing, of the first assignment, that the defendant's third point was affirmed.    This left him nothing to complain of.    The point itself wholly omits any reference to the felonious intent existing in the mind of the defendant when he rang the door-bell.    Without this the point was without point.    An entering of the character referred to would not be burglarious in the absence of any design to commit a felony.    In affirming it the learned judge of the court below ruled the law more favorably to the defendant than he had a right to claim.

Without going into extended details, there was abundant evidence to show a conspiracy between the defendant (plaintiff in error) and his confederate, Rolland, to rob the bank.    This design had evidently existed for a period of some weeks, and the plan carefully arranged.    There were well-matured preparations for disguise and flight; masks and gowns, and a horse saddled, and kept waiting near at hand; a pistol and dirk for defence or attack if necessary, and gags to silence those who might be in the bank.    There was a completeness of preparation that marks the experienced and accomplished burglar.    This was especially the case with Rolland, who appears to have cultivated pleasant social relations with many of the citizens of Chambersburg, and particularly with Mr. Messersmith, the cashier of the bank intended to be plundered.    This enabled him to become familiar with the plan of Mr. Messersmith's house and banking-room.    The evidence was abundant to justify the conclusion that the object of all this social intercourse was to throw the cashier off his guard.    To further inspire confidence, Rolland gave him one or more sealed packages, represented to contain valuables, but which were of course but waste paper.    It was a cunningly-devised scheme—planned with skill, and executed with boldness.    It would have succeeded in all probability but for Mr.

[Johnston v. Commonwealth.]

Messersmith's manly and stubborn resistance. This was probably unlooked for in view of the disposition of the modern cashier to hand over the keys upon demand. The defendant and his confederate having thus laid and matured their plans, the next step was to effect an entrance into the bank. Mr. Kindline states how this was done:—

"I reside in the bank with Mr. Messersmith; I was in bank on night of 24th of March last; I answered the call of the bell; between eight and nine o'clock that night a bell rang from the outside; I was in the main hall when the bell rang; it was then night time; the door was fastened with a dead-latch; it could not have been opened from the outside; I sprung back the dead-latch; I found two men there; one I recognised as Rolland; he asked me whether Mr. Messersmith was in; I said no, he had just walked out; he said he was sorry, that he had a friend from New York that wanted to transact some business with him, and he introduced a Mr. Johnston; defendant is the man; he said he would call later in the evening; I said it was a disagreeable evening, and Rolland said yes, we may have some sleighing yet; then they left. Shortly after Mr. Messersmith came; we talked in the parlor; I did not tell Mr. Messersmith that these parties had been there to see him; I went up-stairs, and Mr. Messersmith to his office; some time after, fifteen or twenty minutes, I heard the bell ring again; I answered it a second time; the dead-latch was down; the door was locked; it was at front door, leading from the street into the hall of the house; I opened the door and found there Rolland and the man he had before introduced as Johnston; he asked me if Mr. Messersmith was in, and I said he was; they came in and put their hats on the rack; Johnston had an overcoat; took that off and hung it up; they had an umbrella this time; I led the way through the hall into the dining-room; they followed to Messersmith's office; I opened the door of the cashier's room, leading from the dining-room in, and saw Messersmith at the grate with his back towards the door."

Was there evidence here of a constructive breaking? Of an entrance obtained by artifice and fraud, by means whereof Mr. Messersmith was deceived and the law evaded? The court below said in answer to the defendant's fourth point: "If you believe that long before the 24th of March 1876, Rolland had conceived the idea of entering the Bank of Chambersburg with intent to rob or steal, and concocted a plan by which he might effect such purpose; that he cultivated the acquaintance of the cashier and placed himself on as familiar terms as he could with him and his family, and began to talk to him of the buying of farms, and finally stated that he had a friend whom he wished to have come to Chambersburg to reside, and spoke of the Stouffer farm and thought it was too small; and on the night in question presented himself with a

friend, who he stated had some business with the cashier, and if you believe this was false and fraudulent and intended to obtain admission to the house, and that it was by means of this that Rolland and Johnston did in fact obtain admission into the house, then this was such a fraud as amounted to a constructive breaking.   If Rolland, by frauds and tricks and artifices, deceived the cashier, and induced him to believe that he was concerned to buy a farm for a friend, and that if he would call at his house with such a friend it would be for that purpose, and that it was thus that he was received into the house, and the whole household was so deceived, and Kindline opened the door under the influence of Rolland's deceptions as to his true character and purposes, it was a constructive breaking." This ruling was not only free from error, but it was more favorable to the defendant than he was entitled to.   It was laying an unnecessary burden upon the Commonwealth.   If, when Rolland and Johnston rang Mr. Messersmith's bell, they did so with the intent of entering under the guise of friendship or the pretence of business, and then robbing the bank, it was a burglarious entry; it was a breaking within the meaning of the law.   Nor would it matter that one of the burglars had established such social relations with Mr. Messersmith that he would have been admitted without question.   It makes the fraud the greater.   The dead-latch was down and the door was locked.   The bolts were withdrawn upon the implied if not express assurance that they came there as friends for social intercourse or to transact business.   This assurance in either case was a trick and deception.   The law is not so impotent as to permit a burglar to enter a house under such circumstances and yet evade the responsibility of his act.   We are not asserting any new doctrine nor extending the application of an old one.   The principle is fully sustained by the authorities cited in Rolland *v.* The Commonwealth, 1 Norris 306.   In addition I will refer to Sharswood's Blackstone, vol. 2, p. 226; Wharton's Crim. Law, vol. 2, § 1539; Roscoe's Crim. Ev. 346; Bacon's Abr., tit. Burglary (A.), 133; Chitty's Crim. Law, vol. 3, p. 856, where numerous authorities are cited in support of the text.   In Ducher *v.* The State, 18 Ohio 317, the facts were these: Sarah Brown was living in the house with her son, John Ondery.   On the night mentioned in the indictment they were awakened by some one knocking at the door; in answer to which John said, "Come in."   The persons outside pulled the latch-string without being able to open the door, when they stated that they could not come in.   John then got up and opened the door, when two men walked into the house. After they had entered one of them nearly closed the door and stood by it; the other stated that they had a warrant for John Ondery from the prosecuting attorney of Pickaway county.   John asked for time to put on his clothes, and after he had done so, one of the men told him that they wanted his money, and asked for his mo-

[Johnston v. Commonwealth.]

ther's money.   John said it was in a chest.   They told her to get the key, which she did.   They tried to open the chest, where John told them the money was, and being unable to do so, with threats of violence induced her to do it, and then took from the chest the money described in the indictment: *Held*, that this was a constructive breaking under the Ohio statute, which provides against a *forcible* breaking and entering.   It will be observed, in the case above cited, that the door was opened in obedience to a knock.   Not a word was said by way of inducement to open it; yet it was a manifest trick and fraud.   When a person rings the door-bell of a house, the owner has a right to presume that his visitor calls for the purpose of friendship or business.   If, in obedience to the summons, he withdraws his bolts and bars, and the visitor enters to commit a felony, such entry is a deception and fraud upon the owner and constitutes a constructive breaking.

That portion of the charge of the learned judge of the court below, which forms the subject of the sixth assignment of error, was certainly a strong expression of opinion, but taking it in connection with the entire charge did not amount to a binding instruction.   It really amounted to no more than saying that if the jury believed the evidence, he did not see how they could fail to convict upon the third count.   This was not error under the facts of this case.   The evidence for the Commonwealth was overwhelming.   It stood unchallenged and uncontradicted by the prisoner.   The jury had no right to disregard the evidences and the case was precisely of that class to which Mr. Justice Strong referred in Kilpatrick v. The Commonwealth, 7 Casey 198, when he said "a judge may rightfully express his opinion respecting the evidence, and it may sometimes be his duty to do it, yet not so as to withdraw it from the consideration and decision of the jury."   If the case were in the least doubtful upon the evidence; if there had been anything for the jury to hesitate about, there might have been more force in this assignment of error.   As it stands the defendant could not have been injured by that portion of the charge complained of.

The seventh and last assignment alleges error in the sentence. The prisoner was sentenced upon the second count, charging burglary.   He was also sentenced upon the third count, which charges an entry without breaking.   Both sentences take effect from the same date, so that the sentence upon the third count imposes no additional imprisonment.   It was probably imposed by the learned judge of the court below in order to avoid bringing the prisoner up for re-sentence in case this court reversed the judgment on the second count.   It was, however, technical error, and as we have sustained the judgment on the second count, the judgment on the third count must be reversed.   The offence of entering was merged in the higher offence of breaking and entering; the greater includes the less.   Commonwealth v. Birdsall, 19 P. F. Smith 482, does not

[Johnston *v.* Commonwealth.]

apply.   There the different counts in the indictment showed different offences.   Here the offence was the same, and this appears from the indictment itself.

> So much of the judgment of the Oyer and Terminer as imposes an imprisonment of six years and four months under the second count of the indictment is affirmed, and so much of the judgment as imposes imprisonment of three years and ten months under the third count of said indictment is reversed.