# Commonwealth *v.* Stern, Appellant.

*Criminal law—Perjury—Evidence—Stenographer's notes—Refreshing memory—Certification of transcript—Act of May 11, 1911, P. L. 280.*

1. On the trial of an indictment for perjury, the stenographer who took the testimony at the trial at which the defendant was charged to have committed perjury, may use the transcript of his notes to refresh his memory where he has previously testified that the notes were correct, that the transcript was made by some one else, but that he had carefully gone over the notes and transcript so that he was able to testify to their accuracy.   In such a case it is immaterial that the transcript had not been certified as provided by the Act of

May 11, 1911, P. L. 280, and that only a portion of the testimony taken at the trial had been used by the witness.

2. Where on the trial of an indictment for perjury the testimony given by the defendant at a former trial is read to a witness who was asked whether the testimony was true or false, the answer of the witness is not open to the objection that it is the expression of an opinion and a conclusion, where it involves an assertion that the testimony was false, and a narration of the facts within the personal knowledge of the witness of the transaction involved.

3. On the trial of an indictment for perjury the materiality of the testimony must be decided by the court, but if the court leaves such question to the jury and the jury properly decides that the testimony is material, the error of the court in referring these matters to the jury is not harmful error and is no ground for reversal.

4. On the trial of an indictment for perjury where it appears that the defendant was charged with giving false testimony in a foreclosure suit on a mortgage, testimony against the defendant is material, which tends to show that he was an intermediary in negotiating the mortgage, and that he falsely swore in the foreclosure suit that he had no authority from the mortgagors to act for them. In such a case a written statement and affidavit by the defendant as to the property he owned is also material, if such papers throw light upon the purpose of his negotiations and his interest in the matter.

*Criminal law—Perjury—Indictment—Different counts.*

5. Where two of the counts in an indictment for perjury merely present different phases without charging separate offenses, an improper conviction on one of the counts, will not relieve the defendant from sentence, if he has been properly convicted on the other count.

6. In such a case the trial judge cannot be convicted of error in charging: "The whole case is for you, you are the judges of the law as well as the facts, but you ought to accept as the law the instructions that the court has given you." The use of the word "ought" does not render the instruction erroneous.

Argued Oct. 5, 1914. Appeal, No. 134, Oct. T., 1914, by defendant, from judgment of Q. S. Montgomery Co., June T., 1913, No. 47, on verdict for plaintiff in case of Commonwealth v. Bernard Stern. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Indictment for perjury. RYAN, P. J., specially presiding.

The fourth count of the indictment charged that Bernard Stern "did unlawfully, willfully, corruptly and falsely swear before Honorable AARON S. SWARTZ, President Judge of the Court of Common Pleas of said County, in a judiciary proceeding then and there depending, in which the case of Louis M. Harris, trading as Isaac Harris Sons, Assignee of John J. N. Fletcher, against Lena Citron, Mortgagor, Lena Citron, Executrix and sole devisee under the last will and testament of Abraham Citron, deceased (the said Lena Citron being now intermarried with Asher Levi), and Lena Levi, real owner, being case No. 68, June Term, 1911, in said court, was being tried, said cause or suit being upon a scire facias sur mortgage (the pleadings, facts and issues in said suit being the same as those specifically set forth in the first count of this indictment), the said oath being legally administered before the said Honorable AARON S. SWARTZ by Sylvester B. Drake, prothonotary of said court, to the said Bernard Stern, he, the said Sylvester B. Drake, then and there having competent and lawful authority to administer the same; the said Bernard Stern having been called as a witness in favor of the defendant in the trial of the above case, and after having been duly sworn as a witness in said case, according to law as aforesaid, did willfully, corruptly, and falsely swear as follows, to wit: (the letter "Q" indicating the questions propounded to the said Bernard Stern, and the letter "A" indicating the answers made to said questions by the said Bernard Stern).

Mr. Larzelere: "Q. Were you authorized by the Citrons——. A. No, sir, I was not."

The Court: Wait until he asks the question.

Mr. Larzelere: "Q. Were you authorized by the Citrons—— A. No, sir. Q. To get this money from them? A. No, sir."

.    .    .    .    .    .

Q. Why did you couple the fact that Abraham Citron

was sick, with the authority you had to receive the money? A. I had received no authority and have not yet. Q. You had full and complete authority to act for the Citrons because he was sick? A. No, sir. Q. That is what you say here (referring to depositions taken on a prior occasion). A. I do not say so. Q. Your daughter practically said so, on the witness stand last evening. A. No, sir, she don't say so. Q. The jury will remember. A. She don't say so."

All of said testimony being material to the issue then and there being tried, whereas in truth and in fact the above-quoted testimony of the said Bernard Stern was false, and the said Bernard Stern well knew the same to be false, and the said Bernard Stern did at the time and place and in the manner and form aforesaid, unlawfully, willfully and corruptly commit willful and corrupt perjury, contrary to the form of the act of the general assembly in such case made and provided, and against the peace and dignity of the commonwealth of Pennsylvania.

The sixth count charged that Bernard Stern "did unlawfully, willfully, corruptly and falsely swear before Honorable AARON S. SWARTZ, president judge of the court of common pleas of said county, in a judiciary proceeding then and there depending, in which the case of Louis M. Harris, trading as Isaac Harris Sons, assignee of John J. N. Fletcher, against Lena Citron, mortgagor, Lena Citron, executrix and sole devisee under the last will and testament of Abraham Citron, deceased (the said Lena Citron being now intermarried with Asher Levi), and Lena Levi, real owner, being case No. 68, June Term, 1911, in said court, was being tried, said cause or suit being upon a scire facias sur mortgage (the pleadings, facts and issues in said suit being the same as those specifically set forth in the first count of this indictment), the said oath being legally administered before the said Honorable AARON S. SWARTS by Sylvester B. Drake, prothonotary of said court, to the said Bernard Stern, he, the said Sylvester B. Drake

then and there having competent and lawful authority to administer the same; the said Bernard Stern having been called as a witness in favor of the defendant in the trial of the above case, and after having been duly sworn as a witness in said case, according to law as aforesaid, did willfully, corruptly, and falsely swear as follows, to wit: (the letter "Q" indicating the questions propounded to the said Bernard Stern, and the letter "A" indicating the answers made to said questions by the said Bernard Stern).

"Q. Did you make a statement over your signature on February 20?  A. No, sir.

Q. Did you say, over your signature on February 20, when you made an affidavit with regard to your property, 'for the purpose of inducing Louis M. Harris, trading as Isaac Harris Sons, to take an assignment of a $7,500 mortgage, given by Abraham Citron and Lena, his wife, to John J. N. Fletcher'?  A. I have never heard of such a kind.  Q. Do you mean to say you did or did not make that statement?  A. No, sir.  Q. What does 'No, sir,' mean?  Do you mean you did not make it?  A. I never heard such a thing.  I never made such a statement; never a statement that the properties were in my own name."

All of said testimony being material to the issue then and there being tried, whereas in truth and in fact the above-quoted testimony of the said Bernard Stern was false, and the said Bernard Stern well knew the same to be false, and the said Bernard Stern did at the time and place and in the manner and form aforesaid, unlawfully, willfully and corruptly commit willful and corrupt perjury, contrary to the form of the act of the general assembly in such case made and provided, and against the peace and dignity of the commonwealth of Pennsylvania.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[We do not submit these counts with the direction that you find them to relate to material testimony. We submit the question to you to be determined from the evidence, whether or not the testimony embraced in these several counts was material to the issue in the cause which was upon trial, and in which this testimony was given.] [17]

[It will be observed that the testimony of the defendant, as set forth in this count, was to the effect that he was not authorized by the Citrons to get the money on the mortgage for them; nor was he to act for them because Abraham Citron was sick. In that connection you will remember the testimony of the witnesses who have been called upon the behalf of the commonwealth as to the history of this transaction. You will consider the circumstance that the arrangement was made for the execution of the papers in the office of Martin H. Stutzbach, the attorney who prepared them, at the instance of either Stern or Harris, who came to the office together, one or the other of whom gave the direction for their preparation. You will recall in this connection what was said either by Stern or by Harris with Stutzbach in his office in reference to the terms of the agreement and the conditions which were to be embraced in the papers drawn. It appears that after the papers were prepared they were sent to Mr. and Mrs. Citron by a son of the defendant; that the papers were returned executed; that subsequently there was produced by Stern, as the court remembers the testimony, a paper authorizing Stern in the premises, purporting to be signed by the mortgagors. You will take into consideration all these, and such other circumstances as you recall from the testimony, to determine whether or not from this evidence Stern was authorized by the mortgagors in this mortgage to act for them in the transaction. In that connection there is the testimony of Harris, the prosecutor, as to what was said to him

by one or the other, or both of the Citrons on the occasion when he went to the property in Conshohocken and saw it. You will also take into consideration the testimony of Stern or the deposition of Stern 'made in the proceedings in Philadelphia to open the judgment.] [18]

[The whole case is for you. You are the judges of the law as well as the facts, but you ought to accept as the law the instructions that the court has given you.] [19]

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were (1–16) rulings on evidence referred to in the opinion of the Superior Court; and (17–19) above instructions, quoting them.

*William T. Conner,* with him *A. S. Ashbridge, Jr.,* and *John R. K. Scott,* for appellant.—The transcript was improperly received: Edwards v. Gimbel, 202 Pa. 30.

Testimony such as given by the witness, Martin F. Moore, and admitted by the trial judge, should not have been admitted: Withers v. Atkinson, 1 Watts, 236; Clark v. Holmes, 43 Atl. Repr. 194; Wells v. Chase, 126 Wis. 202.

There was error in permitting the witness, Louis M. Harris, to state his opinion as to the falsity of the defendant's testimony: Farrington v. Woodward, 82 Pa. 259; Underhill v. Wynkoop, 15 Pa. Superior Ct. 230; Com. v. Campbell, 31 Superior Ct. 9; Com. v. Howe, 35 Pa. Superior Ct. 554.

There was error in the charge of the court: Steinman v. McWilliams, 6 Pa. 170; Com. v. Swayne, 1 Pa. Superior Ct. 547; Com. v. McManus, 143 Pa. 64; Com. v. Shields, 50 Pa. Superior Ct. 194.

*J. B. Larzelere, Jr.,* with him *Conrad S. Sheive,* district attorney, for appellee.

OPINION BY TREXLER, J., February 24, 1915:

There are nineteen assignments of error. The first eleven may be considered together as they all relate to the same subject-matter.

1. The stenographer who took the notes of testimony at the trial at which the defendant is charged to have committed perjury, when called as a witness, was permitted to use his transcript to refresh his memory as to what had been testified at the former trial. The appellant argues that as the transcript was not certified by the stenographer and the trial judge, it could not be used. The Act of May 11, 1911, P. L. 280, sec. 4, provides after certain preliminary steps are taken, including notice to the parties interested, that the transcript duly certified, "Shall be filed of record in the case and shall be treated as official and part of said record for the purpose of review upon appeal and shall be considered as prima facie accurate whenever thereafter offered in evidence in the same or other proceedings, without the necessity of calling the stenographer as a witness to prove the same." The evident purpose of the above section is to relieve litigants of the necessity of calling the stenographer as a witness. When the notes are duly certified they become part of the record and need not be further proven. The language employed shows that the purpose is the authentication of the whole record. It makes no provision as to part of the record. It does not contemplate a filing of part of the testimony. The certified transcript is the complete record of the testimony.

In the case before us no transcript had been certified and filed, and the notes which the witness used were a transcript of the testimony of two witnesses only. There is nothing in the act which makes the transcript of the testimony the only means of proving the testimony, nor does it make it the best evidence. All the act provides is that it shall be considered prima facie correct. In this the act differs from former legislation upon this subject.

The Acts of May 24, 1887, P. L. 199; May 8, 1876, P. L. 140, and May 15, 1874, P. L. 182, provided that the notes were to be official and the best authority in case of dispute and to be used whenever their use was required. The act of 1876 provided that the notes were to be transcribed whether ordered by the court, or not: Chase v. Vandergrift, 88 Pa. 217.

The stenographer who was called testified that the notes were correct; that the transcript was made by some one else, but that he had carefully gone over the notes and transcript so that he was able to testify to their accuracy. All that is necessary unless there is a statutory provision to the contrary is that the authenticity of the testimony be duly established by proper proof under oath: Miles v. O'Hara, 4 Binney, 108; Edwards v. Gimbel, 202 Pa. 30. The appellant did not question the correctness of the testimony but objected to the method employed in its production. Later on in the case the defendant admitted that the language used in the indictment and to which the witness testified, using his notes as a memorandum, was correct, with the exception of one word and as to that he had the benefit of his denial which went to the jury with the rest of the testimony. We see no error in the stenographer refreshing his memory from the notes which he took and therefore the first eleven assignments of error are overruled.

2. A witness was called and the testimony given by the defendant at a former trial was read to him and after its reading the witness was asked whether the testimony was true or false. The objection to this was that the witness in his answer expressed an opinion and gave his conclusion. We do not think the objection is serious. The gist of the charge of perjury was the falsity of the statement made by the defendant. Naturally in order to contradict the statements, the attorney for the commonwealth read to the witness what defendant had said upon the former trial at which the perjury

was alleged to have been committed. Standing alone, the answer of the witness that the testimony was false might be regarded as a mere conclusion, or expression of opinion. It, however, was followed by a narration of facts within his personal knowledge of the transaction involved. Certainly when testimony is in the line of specific contradiction of a witness, some reference must be made to the testimony which is sought to be contradicted, and the testimony of the witness taken in its entirety was a statement of the facts which were vital to the issue trying and were clearly relevant. No function of the jury was usurped. The grounds of the witness' belief were clearly stated and the jury was enabled to judge as to the correctness of his statement. In this we think there was no error.

Assignments numbers twelve to sixteen, inclusive, are therefore overruled.

3. Part of the charge of the learned judge to the jury was in the following words, "We do not submit these counts with the direction that you find them to relate to material testimony. We submit the question to you, to be determined from the evidence, whether or not the testimony embraced in these several counts was material to the issue in the cause which was upon trial, and in which this testimony was given."

The question of the materiality of the testimony should have been decided by the court. As stated in Wharton's Criminal Law (11th ed.), page 1700, the proper course is for the court, assuming the evidence to be true, to determine whether the particular article of evidence is, or is not material. Any dispute of facts is for the jury. The materiality of the testimony assigned as false is entirely a question of law for the court: 30 Cyc. 1456; 22 Am. & Eng. Ency. of Law, page 688; Steinman v. McWilliams, 6 Pa. 170; Com. v. Bossard, 2 Kulp, 113, Rice, P. J.

The court having erred in submitting the materiality of the testimony to the jury, the question remains,

should the court have decided the question in the affirmative? If the testimony was immaterial, an essential ingredient of the crime would be lacking, and the defendant would be exonerated. If, however, we conclude that the testimony was material, the error of the court in referring the matter to the jury did no harm to the defendant, for if the question is left to the jury and they determine it as the court should have done there is no error: 30 Cyc. 456; 22 Am. & Eng. Ency. of Law (2d ed.), page 688, and cases there cited.

There remains therefore the question as to whether the testimony alleged to have been falsely given by defendant was material, and in pursuing this inquiry we may confine ourselves to the fourth and sixth counts of the indictment as it was only upon these two counts that the verdict of guilty was rendered.

As was said in the case above referred to, Commonwealth v. Bossard, 2 Kulp, 113, "It will be found extremely difficult to formulate an exact and unvarying test of the materiality of testimony assigned for perjury. In general terms it may be said that testimony may be assigned for perjury, either where it tends to directly prove or disprove one side or the other in the main issue, or where under the established rules of evidence it directly tends to do so by crediting or discrediting other evidence, or testimony of another witness. In the former case the materiality may be frequently determined by reference to the pleadings without regard to the testimony; in the latter case the testimony being given upon some secondary issue of fact arising on the trial of the case, its materiality can only be determined by an examination of the other testimony which it is intended to corroborate or contradict. In Wharton's Criminal Law (11th ed.) page 1700, is found the following, "False swearing to matter which however valueless and ineffectual ultimately, has yet some prima facie, though illusory weight is perjury, for by this injury and annoyance to another may be at least transiently wrought." "A wit-

ness's answers on his own cross-examination are material and may be assigned for perjury however discursive they may be, if they go to his credit. This applies to his denial that he had previously said certain things:" Wharton's Criminal Law (11th ed.), page 696.

Tested by these standards was the testimony given by the defendant material? Should the court have so ruled? Suit had been brought on a mortgage. The issue on said suit is set out in the indictment, being that "said mortgage being signed by Abraham Citron and Lena Citron, his wife, in favor of John J. N. Fletcher, and assigned to Louis M. Harris, who furnished the money upon said mortgage and paid the same to the said Bernard Stern, who was authorized by the said mortgagors to borrow $6,750 on said mortgage from the said Louis M. Harris, for the purpose of paying the said Bernard Stern moneys alleged to have been advanced by him and paid on account of a building and alterations to an old building upon the mortgaged premises, which premises were owned by the mortgagors as tenants by the entirety; the issue also being whether the said Bernard Stern received the consideration money for said mortgage, whether he had authority to act as the authorized agent of the said mortgagors, with authority to retain said moneys in liquidation of said mortgagors' indebtedness to him, or to pay their debts, and whether any moneys were due the said plaintiff upon said mortgage."

In the fourth count of the indictment, the question of the authority of Stern to act for the mortgagors was the subject-matter of the false statement. This certainly was material. If he was their agent and received the money for them in furtherance of his agency, his act became their act and they were bound by it. As to the sixth count it is alleged that the witness had given his written statement and affidavit as to the property he owned and had submitted this to the intending purchaser of the mortgage for the purpose (as set forth in

the statement) of inducing him to take an assignment of the same. Ordinarily such a statement would have nothing to do with the issue as to whether the mortgage was due and owing, but when the defense is bad faith and fraud in the procuring and transferring of the mortgage and the intermediary is called to prove the absence of consideration and the presence of fraud, his written declaration and affidavit would be material as throwing light upon the purpose of his negotiations, his interest in the matter and also as to the credit to be attached to his testimony. Even if we concede that the materiality of the testimony may be doubtful, the judgment would not be reversed. The defendant was found guilty on two counts of the indictment, each one presenting different phases of the same offense. He could not have been sentenced on each count. They did not charge separate offenses. They were only convenient divisions of the false testimony which the defendant was charged to have given under the one oath which was administered to him. A general sentence was imposed, as but one crime was committed. This sentence was supported by the verdict of guilty on the fourth and sixth counts and were we to hold that he was not properly convicted on the sixth count, it would not affect in any manner the sentence, as the fourth count would still remain to support it: Johnston v. Com., 85 Pa. 54.

This disposes of the seventeenth assignment of error which is overruled.

The eighteenth assignment is as to misquotation of the testimony on the part of the trial judge. A reading of the testimony in the case convinces us that the assignment is without merit.

The nineteenth assignment of error as to the instruction of the trial judge is in the following words, "The whole case is for you. You are the judges of the law as well as of the facts, but you ought to accept as the law the instructions that the court has given you." We do

604    COMMONWEALTH *v.* STERN, Appellant.

not think that this instruction of the court was erroneous. It is in line with the case of Kane v. Com., 89 Pa. 522, and Com. v. McManus, 143 Pa. 64, and a number of other cases. The word, "ought," charged the jury with a duty of accepting the law as laid down by the court, and the instructions were within the decisions above referred to. See also Com. v. Goldberg, 4 Pa. Superior Ct. 142 (150). The nineteenth assignment of error is overruled.

We think the case was tried with due respect to the rights of the defendant and there is no reason why it should be sent back for retrial. As stated in Brown v. Com., 78 Pa. 122, our province is not to look for errors merely in order to reverse but to look for merits in the cause of reversal. A careful consideration of the whole case convinces us that every substantial interest of the defendant was properly guarded and the verdict fully sustained by the evidence.

The judgment is affirmed, and it is ordered that the defendant, appellant, appear in the court below at such time as he may be there called, and that he be by the court committed until he has complied with the sentence or any part of it that had not been performed at the time this appeal was made a supersedeas.