## Commonwealth v. Rivera.

*V. A. Carroll,* for Commonwealth; *John R. K. Scott,* for defendant.

REED, P. J., O. C., 47th judicial district, specially presiding, Sept. 22, 1930.— The defendant, Raymond Rivera, was indicted and charged with the crime of burglary, entering in the night without breaking with intent to commit a felony, and receiving stolen goods. The case came on for trial in Room 453 City Hall on April 25, 1930, at which time the Commonwealth adduced its evidence and the defendant, with his witnesses, was heard, after which the court charged the jury and the defendant was found guilty of all the charges set forth in the indictment; whereupon counsel for the defendant made a motion for a new trial and filed several reasons therefor.

The evidence discloses that the home of Mr. and Mrs. Mertz, at No. 29 Pelham Road, in the City of Philadelphia, was entered on Feb. 5, 1930, at about a quarter past four in the morning; that the room entered was occupied by

Mr. and Mrs. Mertz and "is on the corner of Pelham and Cresheim Roads, a corner room facing the side, and has the full light of the arc light on the corner." The property was located on the corner, having a lawn surrounding it. Three windows were in the room that was entered; two of these windows opened on the Pelham Road side and one on the Cresheim Road side. These windows were located about fifteen feet from the level of the ground, and there is a rain-spout that reaches from below to the window, by which it is alleged the party entered the room occupied by Mr. and Mrs. Mertz. The undisputed testimony on the part of the Commonwealth was convincing beyond a doubt that some one had entered this room occupied by the Mertzes through this second story bedroom window, at or about the time testified to, and had stolen therefrom six articles of valuable jewelry, and there was quite sufficient evidence adduced at the time of the hearing by the Commonwealth to warrant the jury in finding beyond a reasonable doubt that the defendant, Raymond Rivera, was the man who entered the room of the Mertzes and purloined this jewelry. However, counsel for the defendant complains that the Commonwealth adduced no evidence that warranted the jury in finding that a burglary had been committed, inasmuch as the Commonwealth's witnesses testified that the room had been entered through an open window, and that in order to constitute burglary there must be a breaking and entering.

The Act of March 31, 1860 [P. L. 382, § 135], provides as follows:

"If any person shall, by night, willfully and maliciously, break or enter into . . . any church, meeting-house or dwelling-house, or out-house, parcel of said dwelling-house, with an intent to kill, rob, steal, or commit a rape, or any felony whatever, whether the felonious intent be executed or not, the person so offending shall, on conviction, be adjudged guilty of felonious burglary," etc.

It has been held that one who obtains an entry into a dwelling house by any fraud or artifice with the intent to commit a felony may be convicted of burglary, as the gaining entrance by such means is a constructive breaking: Rolland v. Com., 82 Pa. 306; Rolland v. Com., 85 Pa. 66; Johnston v. Com., 85 Pa. 54. And the mere opening of a door after entering, if in pursuance of the felonious intent, is a sufficient breaking, though in a different part of the house than that which was entered or from that in which the felony was to be committed: Rolland v. Com., *supra*.

Counsel for defendant has cited certain sections of Corpus Juris which he relies upon to sustain him in his contention that in the instant case there was no breaking and entering such as contemplated by the common law and the act of assembly, and, also, quotes the greater part of the opinion in Rolland v. Com., 82 Pa. 306, *supra*. These authorities would fully sustain the position taken by counsel for the defendant had the evidence not revealed the fact that there was an unusual entrance to the sleeping room by the intruder, who entered and stole the jewelry from the Mertzes. A review of the cases cited discloses the fact that the entries were usually through an open door or an open window on the ground floor, and the principle upon which these cases were decided is that it was negligence on the part of the owners to leave their doors and windows open, thus inviting any one who might be disposed to commit a felony to enter the building; but no cases have been cited by counsel for the defendant that relieved an intruder who had secured entrance through an open bedroom window, located fifteen feet from the ground, for the purpose of committing a felony, from the charge of burglary.

As before indicated, the courts have recognized a constructive breaking and entering, and in 9 Corpus Juris, 1062, under Constructive Breaking, § 116, it is said:

"As a rule an indictment alleging a breaking and entering is sustained by proof of an entry under such circumstances as to constitute a constructive breaking. In some jurisdictions, by statute, an actual breaking must be proved."

Sharswood's Blackstone, Book 4, page 226, in commenting upon the manner in which burglary may be committed, states:

"There must in general be an actual breaking; not a mere legal *clausum fregit* (by leaping over invisible ideal boundaries, which may constitute a civil trespass), but a substantial and forcible irruption. As at least by breaking or taking out the glass of, or otherwise opening, a window; picking a lock or opening it with a key; nay, by lifting up the latch of a door, or unloosing any other fastening which the owner has provided. But if a person leaves his doors or windows open, it is his own folly and negligence, and if a man enters therein it is no burglary; yet, if he afterwards unlocks an inner or chamber door, it is so. But to come down a chimney is held a burglarious entry, for that is as much closed as the nature of things will permit."

We do not believe that it is going too far to hold that one who in the night-time enters an open bedroom window located fifteen feet from the ground by means of a water-spout has made an entrance in such an unusual way as to constitute a constructive breaking and entry. If we were to hold otherwise, then the inference would be that one who opens a bedchamber window, located fifteen feet or more from the ground, on the second story, or in fact any story of a house or sleeping apartment above the first floor, and leaves it open during the night-time for the purpose of ventilating his room, would be giving an invitation to night prowlers to enter and commit a felony; or, in other words, as Blackstone has said, "It is his own folly and negligence and if a man enters therein it is no burglary." We believe, therefore, after considering all of the evidence in the case, the manner in which the evidence indicates that the intruder entered the room and the unusual place of gaining entrance and the manner in which it was accomplished, evidently by climbing up the rain-spout, that the defendant was guilty of constructive breaking and entering, and that a new trial should not be granted on the ground that the Commonwealth failed to show that there was a breaking and entering with the intent to commit a felony.

Counsel for the Commonwealth has cited the case of Murmutt v. State, 67 S. W. Repr. 508, wherein it is said, on page 511, that "there must be some force, but slight force was sufficient; it may be by raising a window, or the entry at a chimney or other unusual place, or climbing through a window that is an unusual place of entry." It is true that this case was reversed, but the appellate court apparently approved the statement of the lower court, for further on in the opinion it stated: "To say the least of it, these charges are confusing and antagonistic. In the second paragraph the jury are instructed that climbing through a window that is an unusual place of entry is a sufficient breaking or force. In paragraph 5 they are instructed that merely passing into or through an open window is not sufficient force; that a window must be raised higher, etc. Now, if the jury had been told that, in the latter contingency, the window must be a usual place of entry, they might have been able to reconcile the two charges. But in the absence of such instruction they were liable to be confused." This was a Texas case, and counsel for the defendant in his reply brief cites the cases of Winkler v. State, 126 S. W. Repr. 1134, and Smith v. State, 153 S. W. Repr. 851, and insists that these later Texas cases hold otherwise than the case of Murmutt v. State, *supra*, but an examination of these cases does not warrant the conclusion that such is the

case. It is true they define burglary and also refer to the Texas statute that defines what is meant by breaking, as follows: "That the entry must be made by actual force; the slightest force, however, is sufficient to constitute breaking." But notwithstanding the above cases, it is still the law that the entering into a house in an unusual place, such as through a chimney and, as held in Murmutt v. State, "climbing through a window that is an unusual place of entry is constructive breaking and entering."

In the case of People v. White, 117 N. W. Repr. 161, 162, it was said by the appellate court: "We think the rule adopted in the instance above quoted a reasonable one. It is, in effect, that if any force at all is necessary to effect an entrance into a building, through any place of ingress, usual or unusual, whether open, partly open or closed, such entrance is a breaking sufficient in law to constitute burglary, if the other elements of the offense are present."

In the case of Com. v. Stephenson et al., 25 Mass. 354, 355, Parker, C. J., in discussing what constitutes burglary, states the law as follows:

"The question in this case is whether there was a breaking or not. The lifting a latch and opening the door, though not bolted or locked; the shoving up a window, though not fastened; the getting down a chimney, and various other acts done to effect an entry, are held to be a breaking. The offense consists in violating the common security of a dwelling house, in the night-time, for the purpose of committing a felony. It makes no difference whether the door is barred and bolted or the window secured or not; it is enough that the house is secured in the ordinary way; so that by the carelessness of the owner in leaving the door or window open, the party accused of burglary be not tempted to enter. Shutting the window-blinds and leaving the window open for air is a common mode of closing a house in the warm season; if the blinds are forced, it is a breaking."

It appears to the court that the Mertzes who were robbed had secured their house in the ordinary way; that is to say, that the ordinary way to ventilate sleeping rooms which are located above the first story is by leaving the windows open, and if an intruder enters a window under such circumstances, either by means of climbing up a rain-spout, or by climbing up in some other way, and enters the room, he is guilty of breaking and entering, and in case he enters for the purpose of committing a felony, he is guilty of the crime of burglary.

Another reason advanced by counsel for the defendant is that the court erred in refusing to withdraw a juror and continue the case on account of remarks that were made by the district attorney during the trial. It is true that there were some things said and done during the trial of this case that were not strictly ethical, both on the part of counsel for the Commonwealth and counsel for the defendant, but the remarks made by the district attorney were usually drawn by reason of something that was said or done by counsel for the defendant, and while there might have been some remarks made that reflected to a certain extent on counsel for the defendant, we do not see how these remarks could affect the defendant and do not believe that they did, and, therefore, we see no reason for granting a new trial because of any remarks made by the district attorney at the time of the trial.

Counsel for the defendant further complains that the trial judge in his charge had stated that it was admitted that a robbery had been committed in the home of the Mertzes. This was only said in view of the fact that counsel for the defendant in his argument said that it was admitted that Mr. and Mrs. Mertz had their jewelry stolen but denied that his client had anything to do with the larceny of the same; however, after the court's attention was called

to this statement, he said to the jury that the burden was on the Commonwealth to prove beyond a reasonable doubt that a burglary had been committed and the property stolen, or words to that effect.

Counsel also complains that the trial judge had not properly instructed the jury as to the third count in the bill; however, the record shows that what was said by the court is as follows: "By Mr. Scott: I desire to note an exception to that part of your Honor's charge. The third point that I asked your Honor to charge upon is on the third count, that the alleged possession of stolen property in New York City would not raise a presumption of possession of the alleged stolen property in the County of Philadelphia. The Court: I think that is true. It may have been received in New York City. Mr. Scott: I ask for binding instructions on the third count, and ask your Honor to so direct the jury as far as the third count is concerned. The Court: As far as the third count is concerned, members of the jury, if you find the goods were stolen in Philadelphia County, you will also have to find, before you can convict on that count, that the defendant, if you find him guilty of receiving stolen goods, received them in Philadelphia County and didn't receive them in New York City."

We think that that fully covered the request of counsel for the defendant and that there is no just cause for complaint as far as that part of the charge is concerned.

Counsel for defendant also complained that the court refused to charge as follows: "I also have called your Honor's attention to the point that if the jury should find that Rose Garcia and Mrs. Garcia are accomplices they cannot corroborate each other. The Court: There is no evidence in this case to the effect that they were accomplices, and, therefore, I refuse to charge along that line."

I think a careful, honest study of the entire record will fail to disclose any evidence that would warrant the court in submitting that question to the jury, and charging along that line would only have tended to confuse the jury as to the real questions of facts involved in the case.

Another question which the court believes has been unduly emphasized by counsel for the defendant is the fact that the trial judge erred in permitting the district attorney to offer in evidence bills of indictment of November Sessions, 1925, Nos. 462, 463 and 464, for the purpose of attacking defendant's credibility as a witness. It was held in the case of Com. v. Pezzner, 78 Pa. Superior Ct. 286, that the Act of 1911 does not forbid the discrediting of defendant's testimony by producing a record of a former conviction, and the defendant having admitted that he was the party named in the bills, and counsel for the defendant in his argument to the jury emphasizing the fact that the Commonwealth had attempted to drag in other bills of indictment and the court warning the jury that it should not consider these bills for any purpose other than to affect the credibility of the defendant, we believe that the admission of these bills for the purposes for which they were admitted with a careful explanation to the jury was not error, and that the admission came within the ruling as laid down in the above stated case.

There were other reasons advanced by counsel for the defendant as to why a new trial should be granted, but after carefully considering all of them and reading and considering all of the evidence which was given in the case, both on the part of the Commonwealth and on the part of the defendant, and the able briefs of the respective counsel, we are not convinced of error in the admission of evidence, the charge of the court or remarks of the district attorney under the circumstances in which they were made; therefore, we

deem it proper to overrule all of the reasons filed in the case and deny the defendant a new trial.

*Order.*

And now, Sept. 22, 1930, for the reasons above stated, all of the reasons for a new trial are overruled and a new trial is denied.