# Commonwealth *v.* Martin, Appellant.

*Criminal law—Charge of court—Contradiction of testimony—Effect of plea of "not guilty"—Act of May 23, 1887, P. L. 158, sec. 10.*

On the trial of a criminal case, where the defendant offered no evidence, except as to good character, the court cannot be charged with error in commenting upon the testimony of one of the commonwealth's witnesses as to facts, as being uncontradicted, unchallenged, and undisputed. In such a case the plea of "not guilty" is not testimony in the case, nor is the evidence of good character contradictory of the testimony of the witness as to facts; nor can it be successfully claimed that the court in making such comment violated the Act of May 23, 1887, P. L. 158, sec. 10, forbidding an adverse reference to the failure of the defendant to testify in his own behalf.

*Criminal law—Inquiry of juror as to penalty—Charge of court.*

In a criminal case the trial judge cannot be charged with error, where in answer to a question by a juryman as to the penalty, he promptly tells the jury that they have nothing to do with the penalty, that that is a matter for the court exclusively, and that they should not consider it, or enter into any discussion about it, but that any recommendation of mercy or severity would be considered.

The court may in a criminal case express its opinion respecting the evidence, where this is done without misleading or controlling the jury in the disposition of the case.

*Criminal law—Charge of court—Failure to agree.*

The time when the court will discharge the jury for failure to agree is ordinarily a matter of discretion with the trial judge. He may not impose penalties, nor should he subject to undue physical discomfort, but a failure to discharge the jury on request does not amount to coercion.

Where in a criminal case the evidence against the defendant is positive, clear and not contradicted, the court commits no impropriety in impressing upon the minds of the jury the importance of arriving at a verdict.

*Criminal law—Charge of court—Review of the evidence.*

On the trial of a criminal case where all the evidence of facts is developed in the testimony offered by the commonwealth, the court cannot be charged with error and unfairness, because much of the charge is devoted to the commonwealth's side.

Argued May 9, 1907.    Appeal, No. 195, April T., 1907, by defendant, from judgment of Q. S. Allegheny Co., Dec. T.,

1906, No. 586, on verdict of guilty in case of Commonwealth v. W. A. Martin. Before RICE, P. J., HENDERSON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Indictment for bribery.

EVANS, J., charged as follows:

The defendant is indicted under the Act of assembly of May 23, 1874, P. L. 230, which provides that certain acts therein described, by certain persons mentioned, shall be indictable. The section of this act applying to this case has been read by counsel, but in order that it may be impressed more fully upon your minds, I will read it again.

Section 8. "A member of Council who shall solicit, demand or receive, or consent to receive, directly or indirectly, for himself or for another, from any company, corporation, or person, any money, office, appointment, employment, testimonial, reward, thing of value or enjoyment, or of personal advantage, or promise thereof, for his vote or official influence, or for withholding the same, or with the understanding, expressed or implied, that his vote or official action shall be in any way influenced thereby, or who shall solicit or demand any such money or other advantage, matter or thing aforesaid, for another, as the consideration of his vote or official influence, or for withholding the same, or shall give or withhold his vote or influence in consideration of the payment or promise of such money, advantage, matter or thing to another, shall be guilty of bribery."

In the first clause I ask your special attention to the terms used so far as they affect the action of the member of council "who shall solicit, demand, receive, or consent to receive, directly or indirectly, for himself or for another, from any company, corporation, or person, any money, office, appointment, employment, testimonial, reward or promise thereof" to influence his public act. The defendant has been since the first Monday of April a member of the common council of this city, and the act of assembly under which this defendant is indicted, applies to the common councilmen of this city. Therefore, you start with a proposition that this defendant is subject to the provisions of this act. There was before the councils of this city, as shown by the records thereof offered by the com-

monwealth, in this case, an ordinance granting certain rights
and franchises to the Pittsburg and Tube City Railroad, and
the evidence on the part of the commonwealth is that the
president of the railroad, and the person who actively repre-
sented it in negotiating for the passage of that ordinance
through councils, was one C. S. Cameron; that the engineer
of that railroad, who had prepared its plans and made its sur-
veys, was Milholland; that Cameron had an office in the Arrott
building in this city, at the corner of Wood street and Fourth
avenue, and that Milholland had an office in the Victory build-
ing, on Fourth avenue, above Smithfield street. There is not,
so far as I have heard from the evidence or from the remarks
of counsel, any contention that these facts as I have related
to you are not true. This ordinance had passed select coun-
cil and had been sent through in the regular course of coun-
cilmanic business, to common council, and on motion of this
defendant, Martin, the rules were suspended, and the ordi-
nance was passed second reading. Millholland, the engineer of
the Pittsburg and Tube City Railroad, was called upon the
stand to testify to certain transactions, and did testify to cer-
tain transactions between himself, C. S. Cameron and the de-
fendant. I do not propose going over in detail all the testi-
mony, but you will remember that he testified to first receiving
a check, which he saw lying on the table in the presence of
Cameron and Martin, with instructions for him to take it and
put it in a safe deposit vault, which he had already rented at
the suggestion of Cameron, and to hold the check subject to
the order of Martin and Cameron; that he subsequently re-
turned that to Cameron on the order of Martin; that at dif-
ferent times he received packages purporting to contain $60,000
and $70,000, which he would receive in the presence of Came-
ron and Martin, with instructions to put them in his safe de-
posit vault, and keep them safe and hold them subject to the or-
der of Cameron and Martin, as he put it; that he returned them
when ordered to Cameron and Martin, each of which packages
he subsequently returned to Cameron on the order of Martin,
and on one or two occasions Martin stating that "It's all off."
That he received the keys under similar circumstances, to be
put in safe deposit vaults, which he was to hold subject to the
order of Cameron and Martin.

The commonwealth has produced upon the witness stand a man by the name of Richardson, who testified as to his providing the $60,000, and on two or three occasions, I have forgotten which, $70,000, at the request of Cameron, and of delivering it to Cameron in the presence of Martin, and of his getting it back again under an arrangement with Cameron. Milholland testified that his understanding of this transaction, so far as the handling of this money was concerned, was that the $60,000, that the $70,000 was used, or to be used, for the furtherance of the Tube city ordinance through councils and over the mayor's veto. He testified that he got his information from Martin and from Cameron both. Now, there has been considerable said upon the subject of Milholland's character and acts in this connection. It has been stated that Milholland is in the employ of some persons interested in the defeat of the Tube city ordinance, and that his testimony here on the witness stand was in furtherance of that conspiracy. I have said to you, gentlemen, several times during this case, cautioned you that you should try this case in accordance with the evidence as it comes from the witnesses. There is no evidence here that Milholland is in the employ of or the employment of anybody except the Tube city railroad. There is no evidence here that anybody was interested in the defeat of the Tube city ordinance. The evidence as it appears here is the testimony upon which you will try this case, and not remarks upon the part of counsel, or what may possibly be the case where there is no evidence to justify. [Milholland is not on trial here except so far as his credibility is on trial as to the weight which you will give the testimony that he presents to you on the witness stand, and in passing upon his credibility you will consider the fact that he was engaged in the same business, which his testimony will tend to show. In other words, to a certain extent at least, if Martin is guilty, he was an accomplice. But on the other hand, in passing upon his credibility you must consider the fact that every statement he gave upon the witness stand goes unchallenged; he is not contradicted by any testimony offered upon the witness stand. His various statements as to what was done with the keys, money and checks are uncontradicted. His statement that this money was to be used for the passage of the Tube city ordinance is uncontradicted. His statement

that he got that information from Cameron and Martin is un-contradicted, and in passing upon his credibility it is important for you to consider that. The evidence as shown, as I have stated, on the part of the commonwealth, that evidence was uncontradicted that there was some dealing between this defendant and Cameron, wherein $60,000 figured, and then $70,000, or what was supposed to be $70,000 and $60,000. [And if you find from the evidence that that course of dealings did take place as related here by Milholland, Flaherty and by Richardson, as to whether that was an honest transaction, or whether it was a dishonest transaction, such as the charge as made against the defendant here, in addition to the undisputed testimony of the witness that it was understood and stated by the two other parties in the case that it was to be used for the passage of the ordinance through councils; in addition to that you take into consideration the acts of the parties as to whether it was an honest above-board transaction, or whether it was a dishonest transaction, one necessary to do in secret, one that the public should not be informed of.] [1-3] And in passing upon that question you must line it up with the ordinary conduct of individuals; whether $70,000 is ordinarily paid in cash; whether it is placed in safe deposit vaults subject to the order of the two persons who are dealing; whether this defendant, in the two times which his name appears in connection with the transaction, when he gives the name of the person renting the box, did not give his own, and in one case not his own address, but in one case gave William Martin instead of William A. Martin, and in the other W. J. Martin, all these things you must consider. In pointing them out to you I am not stating to you what value you ought to give them, but I say they are evidence in this case for your consideration in passing upon the question, which is the question in this case, was this an honest transaction? Was it a transaction that could be enforced in the court if either side broke his agreement, or was it a transaction that the law did not countenance, which the parties knew they had to enforce themselves, and that neither could enforce in court? That is an important fact in this case. In this case if you find from the evidence that the defendant did solicit money or other valuable things, for his vote or influence in the councils of this city, or if you

find that he did not solicit, but agreed to accept it, then it does not make any difference if by a sleight-of-hand performance he was deprived of the possession of this money. If he was promised, and agreed to act upon that promise, and they had arranged that he would not get the money, that would not affect his guilt or innocence in this case. The facts in this case are for your determination. I have instructed you as to what may constitute in law the offense of which this defendant is charged. Whether or not the evidence produced here justifies his conviction is for you determine. I have gone over the facts in the case, and pointed out to you the evidence produced on the question of the guilt or innocence of the defendant. It is for you to apply them. The burden is on the commonwealth to satisfy you beyond a reasonable doubt of the guilt of the defendant. A reasonable doubt is a doubt which arises out of the evidence, which arises in your mind out of the evidence produced in this case. If that evidence raises a doubt of the guilt of this defendant, then it is your duty to acquit him, but that doubt must be a reasonable one, not the mere fancied possible one. The defendant has offered you evidence of good reputation. The law has said that evidence of reputation is evidence substantive of his character; that it is not mere makeweight, but evidence for your consideration in passing upon the guilt or innocence of the defendant. It is evidence which may raise that reasonable doubt. That court says the evidence may raise that doubt if the evidence of good reputation is proven, and if you, in consideration of all the evidence in this case, the evidence of good reputation included, have a reasonable doubt, then it is your duty to acquit the defendant; but if in the consideration of evidence of good reputation with the evidence of guilt, if in the consideration of it altogether you fail to find a reasonable doubt, then it is just as much your duty to convict. I am instructed by the counsel for the commonwealth, and I say to you I have not examined it, and am not in a position to say, that this a misdemeanor. Being that, in case you acquit, you must dispose of the costs, but if you convict, you have nothing to do with the costs.

Counsel for defendant asks for a general exception to the charge, and a special exception to that part of the charge relating to the undisputed testimony of the witness Milholland.

Exceptions allowed.

Additional instructions given to the jury on Wednesday, January 9, 1907, at 3 : 45 P. M.

PRESENT:

For the commonwealth: H. L. Goehring, Esq., district attorney.

For the defendant: Rody P. Marshall, Esq.

The Court: Gentlemen, I have a communication from your foreman stating that you desire additional instructions. Is that correct?

Mr. Ayres, a juror: Your honor, there are those of the jury—

The Court: Just before you make any remark let me state that I do not want to know, nor want you to state, what the result so far has been. I don't want to know what the result of your ballots has been, or anything of that kind.

Mr. Ayres: Your honor, there are those of the jury that would like to have the point defined with reference to the gravity of the charge in the indictment, it being a misdemeanor, and it having been referred to as bribery. We would like to have the difference defined between the charge of bribery and what is meant to convey in the indictment and a misdemeanor.

The Court: The offense charged, gentlemen, is bribery. Bribery is a misdemeanor. The indictment may state on its back, " Misdemeanor ; " the offense charged is bribery. Misdemeanor is the name of a class of offenses. It is not the name of any particular offense. Offenses are divided in this state into felonies and misdemeanors. The offense charged here is bribery and I defined to you what bribery is, and I suppose you understand it from that definition or the act of assembly which I read in your presence. The word misdemeanor has no special significance with regard to the nature or character of this crime except that it is one of two classes of crimes, namely, felony and misdemeanor; and this is a misdemeanor. Is that satisfactory to all of you? Is that what you mean by the question?

Mr. Ayres: It was also suggested that some of them would like to know regarding the penalty.

[The Court: The penalty you have nothing to do with. That is for the court entirely. The court has absolute control over that. Any recommendation which you may make we will consider. Nothing outside of that has this jury anything to do

with, and they should not consider it, and it should not enter into your discussion any further than a recommendation of mercy or severity, as you may see fit.] [4]

To which additional instructions counsel for defendant requested an exception. Exception allowed and bill sealed.

Supplemental instructions to the jury in the above-entitled case, Thursday, January 10, 1907, at 3 : 30 P. M.

Gentlemen of the jury : I have a communication from your foreman that you have not been as yet able to agree. Is there any further instruction that I can give you that would aid you in coming to a verdict?

The foreman: I don't believe there is ; you might send us back again.

The Court: This is a case of considerable importance, gentlemen. [The evidence, in my judgment, is not complicated. I do not want to force any man's judgment or conscience in the matter, but it does seem to me that in this case this jury ought to have been able to arrive at a verdict.] [5] Unless somebody here is suffering from the confinement, I do not feel inclined to discharge you yet.

The foreman : I ask to be sent back to the room.

The Court: I would suggest you return and make further effort to agree in this case.

On Friday, January 11, 1907, at 3 : 40 P. M., the jury again returned to the court room and the following colloquy took place :

The Court : Well, gentlemen, you do not appear to be very much the worse for having stayed out so long. I will ask you again if anybody is suffering seriously from this confinement?

The foreman : No, we are not.

[The Court: I have received your communication again today asking that you be discharged. I have given this question considerable consideration and I do not think this is a case where there ought to be a disagreement. In a case where the testimony was as clear as it was in this case, I do not think it would be my duty to discharge you now. I ask you to return to your jury room and make an effort to agree upon a verdict in this case.] [6]

Verdict of guilty, upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were (1–6) above instructions, quoting them.

*Rody P. Marshall*, for appellant.—Where the most essential facts of the commonwealth's case consist of the testimony of a discredited witness, which it does not appear to be in the power of the defendant to oppose by direct testimony without taking the stand himself, and the defendant by counsel strenuously contests the case against him, producing in his own behalf evidence, though only of good character, it is error for the court in charging the jury to comment upon the statements of such witness as " unchallenged," " uncontradicted," " undisputed : " Schultz v. Schultz, 113 Mich. 502 (71 N. W. Repr. 854) ; Com. v. Pipes, 158 Pa. 25.

It is error for the court in its charge to discuss before the jury the probable consequences of a conviction: Com. v. Switzer, 134 Pa. 383.

In additional instructions, after a jury has deliberated for a long time (in this case for two and three days), with a view to reaching a verdict, it is exerting an improper influence amounting to coercion to tell them that they ought already to have reached a verdict, because the evidence is not complicated, and that because the evidence is plain, their request to be discharged is refused: Frandsen v. Chicago, etc., R. R. Co., 36 Iowa, 372; Jackson v. State, 91 Wis. 253 (64 N. W. Repr. 838) ; Odette v. State, 90 Wis. 258 (62 N. W. Repr. 1054).

The court's charge as a whole was biased and unfair to the defendant.

*John Marron*, with him *H. L. Goehring*, district attorney, for appellee.—The instruction as to the commonwealth's testimony being uncontradicted was proper: Johnston v. Com., 85 Pa. 54; Com. v. Furman, 22 Lanc. L. Rev. 225 ; Frazier v. State, 135 Ind. 38 (34 N. E. Repr. 817) ; State v. Seely, 92 Iowa, 488 (61 N. W. Repr. 184) ; State v. Ward, 17 Atl. Repr. 483; People v. McGrath, 5 Utah, 525 (17 Pac. Repr. 116).

The comment of the court on the subject of punishment was made in answer to the question of the jury, and instead of offending against the principle of Commonwealth v. Switzer, 134 Pa. 383, made it certain to the jury that the question of punishment was not " a subject for their consideration," and

guarded the jury against the error committed by the court in Commonwealth v. Switzer.

The court may advise the jury of the necessity of finding a verdict: Aharn v. Mann, 60 N. H. 472; Johnson v. State, 60 Ark. 45 (28 S. W. Repr. 792); White v. Calder, 35 N. Y. 183; Miller v. Miller, 187 Pa. 572; Johnston v. Com., 85 Pa. 54; Kilpatrick v. Com., 31 Pa. 198; Fredericks v. Northern Central R. R. Co., 157 Pa. 103.

OPINION BY HENDERSON, J., October 7, 1907:

All of the assignments of error relate to the charge of the court the objections to which may be briefly stated as follows: (1) The trial judge commented upon the testimony of one of the witnesses for the commonwealth as being "unchallenged," "uncontradicted," "undisputed;" (2) the probable consequences of a conviction were discussed; (3) the supplementary instructions to the jury amounted to coercion; (4) the charge as a whole was biased and unfair to the defendant. One of the principal witnesses for the commonwealth was Milholland. It would appear from the charge of the court that an attempt had been made to show, by argument of counsel or by suggestion in the course of the trial, that this witness represented interests antagonistic to the railroad company which was seeking a franchise from the city councils and with reference to this subject the court instructed the jury that Milholland was not on trial except so far as his credibility was involved; that in determining the weight to be given to his evidence they should consider the fact that he was engaged in the same business of which the defendant was accused—in other words, that to a certain extent he was an accomplice. In that connection the court said that in passing on his credibility they should consider the fact that every statement he gave as a witness was unchallenged; that he was not contradicted by any testimony offered upon the witness stand. The words, "unchallenged," "uncontradicted" and "undisputed" were used in the same sense and indicated that no one had been called who contradicted the testimony of the witness. His evidence was strongly corroborated in its material parts and the commomwealth's case did not wholly depend upon his testimony. After directing the attention of the jury to the allegations of the

witnesses in support of the commonwealth's case the judge said: " I am not stating to you what value you ought to give them" (the statements of the witnesses), " but I say that they are evidence in this case for your consideration in passing upon the question, which is the question in this case, was this an honest transaction ? " The court further said: " The facts in this case are for your determination. I have instructed you as to what may constitute in law the offense of which this defendant is charged. Whether or not the evidence produced here justifies his conviction is for you to determine." As there were no witnesses called for the defendant to testify in regard to the acts of the defendant out of which the accusation grew the learned trial judge did not exceed his duty in the language of the charge complained of. The evidence of the commonwealth's witnesses was uncontradicted, unchallenged and undisputed by any witness called for the defendant and an examination of the charge will show that that is what the court said. The plea of " not guilty " was not testimony in the case, nor was the evidence of good character contradictory of the testimony of the witnesses who narrated the various transactions proved by the commonwealth in support of the indictment. All of the evidence in the case bearing upon the guilt or innocence of the defendant, except that presented in support of his good character, was offered by the commonwealth. The trial judge was within the limits of propriety, therefore, when he used the language attributed to him and the jury could not have had any other understanding of this part of the charge than that no witnesses had been called by the defendant to controvert what the commonwealth's witnesses had said on the stand. Similar language was used in Johnston v. Com., 85 Pa. 54. It is claimed that the court violated sec. 10 of the Act of May 23, 1887, P. L. 158, in referring to the evidence as uncontradicted. We are unable to find in the charge any language equivalent to an " adverse reference " to the failure of the defendant to testify in his own behalf. Several persons participated in the acts which it was claimed by the commonwealth amounted to a conspiracy to bribe and any of these might have been called by the defendant if he had desired so to do. The fact that they were called by the commonwealth did not preclude the defendant from using the

same witnesses. His relation to the transaction apparently made it inexpedient for him to call as witnesses the persons with whom he had been acting, and it was the privilege of the court to call the attention of the jury to the fact that the commonwealth's witness had not been opposed by the testimony of any witnesses called for the defense. No reference was made to the failure of the defendant to testify and it was certainly not the purpose of the statute to restrict discussion in the trial of a case beyond the manifest purpose indicated by its language.

We do not find anything in the charge to justify the criticism that it discussed the probable consequences of a conviction. The remarks of the court were in response to a suggestion of one of the members of the jury that some of them " would like to know regarding the penalty." The jurors were promptly informed that they had nothing to do with the penalty; that that was a matter for the court exclusively; that they should not consider it or enter into a discussion on that subject, but that any recommendation of mercy or severity would be considered. Com. v. Switzer, 134 Pa. 383, cited by the appellant, is very different in its facts from the case under consideration. The court there informed the jury what the sentence would probably be in case of a conviction and it was this putting before the jury of the probable action of the court which was said by the Supreme Court to be unfortunate.

The right of the court to express its opinion respecting the evidence where this is done without misleading or controlling the jury in the disposition of the case is shown by many cases. In Johnston v. Com., 85 Pa. 54, there was a strong expression of opinion of the guilt of the defendant. In Kilpatrick v. Com., 31 Pa. 198, it was said : " A judge may rightfully express his opinion respecting the evidence and it may sometimes be his duty to do so, yet not so as to withdraw it from the consideration and decision of the jury." To the same effect are : Leibig v. Steiner, 94 Pa. 466 ; Spear v. R. R. Co., 119 Pa. 61 ; Baltimore & Potomac R. R. v. Fifth Baptist Church, 137 U. S. 568 ; Simmons v. U. S., 142 U. S. 148 ; Doyle v. Ry. Co., 147 U. S. 413. There was here, however, no expression of opinion as to the guilt or innocence of the defendant. That question was wholly committed to the jury. The authority of a

judge to adopt reasonable methods to bring about a verdict cannot be doubted if the verdict be based upon conscientious convictions and to that end a judge may impress upon the jury the importance of reaching such a verdict: Miller v. Miller, 187 Pa. 572. Nothing more than that was done in this case. The time when the court will discharge a jury for failure to agree is ordinarily a matter of discretion with the trial judge. He may not impose penalties, nor should he subject to undue physical discomfort, but a failure to discharge the jury on request does not amount to coercion. There was no request to be discharged by this jury until they came in the third time and then in reply to an inquiry whether they were suffering seriously from their confinement the foreman replied that they were not. They were asked to return to the jury room and make an effort to agree on a verdict in the case. Ahearn v. Mann, 60 N. H. 472; Erwin v. Hamilton, 50 Howard's Prac. Rep. 32, and White v. Calder, 35 N. Y. 183, are cases in which the court urged upon the jury the importance of arriving at a verdict in terms as strong or stronger than are complained of here and these cases are cited with approval in Miller v. Miller, 187 Pa. 572. When we consider that the evidence was positive, clear and not contradicted, the propriety of the action of the court in impressing upon the minds of the jury the importance of arriving at a verdict cannot be questioned.

The charge does not appear to us to be obnoxious to the criticism of unfairness. That it dealt largely with the evidence for the commonwealth was a result of the fact that all of the evidence of facts bearing on the charge against the defendant was offered by the commonwealth. If the trial judge reviewed the evidence at all he necessarily devoted his attention principally to the commonwealth's side. The attention of the jury was called, however, to the evidence offered for the defense and its relevancy and importance was clearly stated. Taking the whole evidence into consideration the defendant has no just cause to allege that the case was not fairly presented to the jury.

The assignments of error are overruled, the judgment is affirmed and the record remitted to the court below to the end that the sentence may be carried into execution.