## Commonwealth v. McKay et al.

*Criminal law — Information — Indictment—Motion to quash—Failure of committing magistrate to read information—Want of probable cause.*

1. In the absence of a statute, defects in the information or complaint upon which the committing magistrate acted are not, after indictment found, ground for a motion to quash.

2. If there was in fact probable cause to justify the arrest of a defendant, and such cause was shown to the committing magistrate, the circumstance that the magistrate did not choose to read the information himself before issuing the warrant is not reason for quashing the indictment.

*Criminal law and procedure—Election fraud—Secrecy of the ballot—Witnesses—Cross-examination—Privilege.*

3. Upon the trial of an indictment charging a false and fraudulent return of election for city councilman, witnesses called by the Commonwealth testified that they had voted for the defeated candidate. Upon cross-examination, the defendant undertook to inquire from these witnesses as to how they voted in other contests at the same election, for the purpose of testing their recollection and credibility. The trial judge declined to allow such questions unless the witnesses chose to waive the privilege of the secrecy of the ballot: *Held*, the question was properly excluded. The secrecy of the ballot is a policy of the law. No elector is required to disclose how he voted unless it becomes necessary in a judicial proceeding. It was not necessary in this proceeding to know how the witnesses voted for other offices.

*Criminal law and procedure—New trial—Remarks of counsel—Reference to defendant's failure to testify—Act of May 23, 1887.*

4. Upon the trial of an indictment charging a false and fraudulent return of election, a statement by counsel that "McKay said to Wells: 'You will not get any votes,' . . . and they have not put McKay on the stand or any person to deny that," was a reference to the fact that McKay had not offered himself as a witness. It was an adverse comment, because the inference necessarily was that, since he had not denied the statement attributed to him, it must be true. The error was too vital to be cured by subsequent explanation or caution, and required a new trial to be granted.

Motion for new trial and in arrest of judgment. Q. S. Dauphin Co., March Sess., 1922, No. 100.

*Robert Stucker* and *M. E. Stroup*, for motion.

*Philip S. Moyer*, District Attorney, and *J. Dress Pannell*, contra.

HARGEST, P. J., Dec. 18, 1922.—William S. McKay, Benjamin M. Africa and Charles Bishop, being the judge and inspectors of election, respectively, of the 3rd precinct of the 3rd Ward of the City of Harrisburg, were indicted for making a false and fraudulent count, and a false and fraudulent return, of the votes cast in the municipal election on Nov. 8, 1921, for Harry C. Wells, a candidate for the office of city councilman. George Bomgarten is not mentioned in the body of said indictment, but appears in the caption of the case.

These four persons were also indicted to No. 59, March Sessions, 1922, for conspiracy to falsely and fraudulently count said votes and to make a fraudulent and false return thereof. That indictment included George Bomgarten, who was a fugitive at the time of the trial. Charles Bishop did not appear when the case was called. The two cases were tried together. The jury acquitted the two defendants, McKay and Africa, on the charge of conspiracy, and rendered a verdict of guilty in this case.

At the trial, a motion was made to quash the indictment on the ground that there was no legal or valid information or complaint made upon which the defendants were arrested, because the alderman was not familiar with, nor

did he know the contents of, the paper purporting to be the information, and that, upon the signing of the same, Wells, the prosecuting witness, took the paper with him out of the possession of the alderman; that the indictments are defective because Bomgarten is indicted with the other defendants, when Bomgarten has never been held to answer in court. This motion was overruled at the trial, and it is now revived in a motion in arrest of judgment. From the oral and written argument we now understand that the motion is pressed only upon the ground that because the prosecuting witness brought the prepared information to the alderman's office and swore to it without the alderman having read it to the witness, it was issued without probable cause, in violation of provisions of both the Federal and State Constitutions. An *ex parte* affidavit has been offered to the court, in which the alderman states that he did not read the affidavit to Wells; that he did not know the contents of said affidavit at the time it was signed by Wells, and that, upon the signing, Wells took the same with him and retained it for several days.

The return of the alderman shows a very specific and detailed information made by Harry C. Wells, and sworn to on Nov. 15, 1921, upon which a warrant was issued. A hearing was not set until Dec. 8th, and was continued to Dec. 19, 1921, then to Feb. 6, 1922, and, finally, these defendants were held for court on Feb. 10, 1922. The case was tried Sept. 18, 1922. There was no motion of any kind, prior to the motion to quash the indictment, made at the trial.

The 4th Amendment to the Constitution of the United States, and section 8 of article I of the Constitution of Pennsylvania, provide, in almost identical language, that the people shall be secure from unreasonable seizures, and that no warrant shall issue to seize any person without "probable cause," supported by oath or affirmation, subscribed to by the affiant. The information sets out abundant cause with much more particularity than is required. If the cause in fact existed and was shown to the committing magistrate, the circumstance that he did not choose to inform himself before issuing the warrant is no reason for quashing the indictment, even if the motion to quash were the proper remedy. In this case the information is not defective, as it was in Com. *v.* Clement, 8 Dist. R. 705.

But we do not think the motion to quash is the proper remedy. The general principle is stated in 22 Cyc., 418, as follows: "In the absence of a statute, defects in the information or complaint upon which the committing magistrate acted are not, after indictment found, ground for a motion to quash."

In Com. *v.* Williams, 54 Pa. Superior Ct. 545, 553, a similar question was raised that the warrant of arrest was not based on an information sworn to and subscribed by the affiant, charging the defendant with crime, and, therefore, invalid under the 4th Amendment to the Federal Constitution, as well as under section 8, article I, of the Constitution of this Commonwealth. The court said: "We are not prepared to accede to the contention of his counsel that the arrest was illegal; but even if it be conceded that the warrant was not based on a proper information, we are of opinion that, under the circumstances to which we have alluded, this was not a valid ground for quashing the indictment: Com. *v.* Brennan, 193 Pa. 567; Com. *v.* Mallini, 214 Pa. 50; Com. *v.* Dingman, 26 Pa. Superior Ct. 615; see, also, York City *v.* Hatterer, 48 Pa. Superior Ct. 216."

For these reasons, the motion in arrest of judgment is overruled.

The defendants ask for a new trial because *(a)* the court refused to permit witnesses for the Commonwealth to be questioned generally for whom they voted and how they marked their ballots; *(b)* the court should have with-

3 D. & C.

drawn a juror and continued the case, in view of the language used by private counsel for the Commonwealth in his address to the jury.

(a) One of the essential facts to be proven in this case was whether there were more votes cast for Harry C. Wells than were counted for him. A number of witnesses were called for the Commonwealth, who testified that they voted for Wells. The defendants then claimed the right to ask those witnesses generally how they voted for other candidates for other offices which appeared on the ballot, for the purpose of testing the recollection and credibility of the witnesses. This we declined to allow unless the witness chose to waive his privilege of the secrecy of his ballot. We did not see how asking a witness in September, 1922, for whom he voted and how he marked his ballot at a municipal election in November, 1921, could throw any light upon his credibility. Full latitude was given for cross-examination as to how the witness voted for city councilman and his recollection in that regard. We think that was the limit to which the defendants were entitled to go.

Section 4 of article VIII of the Constitution of this Commonwealth provides that the election officers shall be "sworn not to disclose how any elector shall have voted, unless required to do so as witnesses in a judicial proceeding." The secrecy of the ballot is a policy of the law. No elector is required to disclose how he voted, unless it becomes necessary in a judicial proceeding: Com. v. Ryan, 1 Wilcox, 147. It was not necessary to the determination of any issue in this judicial proceeding to inquire for whom the witnesses voted for other offices than that of city councilman. We are, therefore, of opinion that there was no error in excluding that evidence.

(b) During the trial, the witness Wells testified to a conversation had with McKay on election day, in part, as follows: "Mr. McKay stepped back toward me and said he wasn't going to give me any votes to-day." Private counsel for the Commonwealth, in commenting on this conversation, said: "McKay said to Wells, 'You will not get any votes.' Aldinger said he didn't know whether it was 'any' or 'many,' and they have not put McKay on the stand, or any person, to deny that."

Counsel for the defendant immediately asked for the withdrawal of a juror and the continuance of the case, which the court declined. This remark and the failure of the court to continue the case is pressed as reason for a new trial.

At the time, the court cautioned the jury to pay no attention to the remark. Section 10 of the Act of May 23, 1887, P. L. 158, provides, in part: "Nor may the neglect or refusal of any defendant, actually upon trial in a criminal court, to offer himself as a witness be treated as creating any presumption against him, or be adversely referred to by court or counsel during the trial."

In Com. v. Holtham, 5 Dist. R. 24, it is said: "In our judgment, the error is too vital to be cured by subsequent explanation or caution. When the reference to the defendant not testifying has once been made, the evil has been done. It has had a lodgment in the minds of the jury. No one can measure the depth of the impression made nor the extent of the prejudice created. The constitutional and statutory protection assured the defendant has been swept away."

With this reasoning we are in accord, notwithstanding in some other states it has been held that proper admonition by the court may cure the effect of the objectionable remarks: Com. v. Richmond, 20 Am. & Eng. Ann. Cas. 1269, and note. We think that the Pennsylvania rule requires a new trial, and, therefore, if the remarks of counsel amount to an adverse comment upon the

failure of the defendant McKay to take the stand, such new trial must be granted: Com. v. Foley, 24 Pa. Superior Ct. 414; Com. v. Green, 233 Pa. 291.

In Com. v. Sheppell, 23 Dist. R. 903, the court refused to charge as requested by the defendant, that there was no presumption against the prisoner on account of his failure to testify. The court said, in granting a new trial: "The prohibition of the statute extends to the court as well as to counsel, and the only safe practice is that which has been followed by the courts of this and other states, namely, to allow no allusion whatever to be made to the fact that the prisoner has not gone upon the stand, and to hold that calling a jury's attention, directly or indirectly, to the fact that the prisoner has not testified is a fatal error. Any other practice would result in destroying the protection guaranteed to the defendant by the statute."

The question, therefore, is whether the remark of counsel may be construed to be an obscure remark or a general reference to the failure on the part of the defendant to offer certain testimony, or whether it is a reference, direct or indirect, to the failure of McKay to take the witness-stand.

In Com. v. Foley, 24 Pa. Superior Ct. 414, the district attorney said: "You have this woman here without denial." Of this remark Judge Orlady said, referring to the privilege granted by the Act of 1887: "This privilege of the defendant would be of little value if the fact that she claimed its protection could be made the basis of an argument to establish her guilt. To extend the formal protection of the privilege and then allow the fact that she had claimed it to be used as affording a presumption against her would be a sort of mockery of which the law is not guilty. In spite of all the reasoning and refining which may be urged, there was but one deduction to be drawn from the remark as made under the circumstances, namely, that the refusal of the defendant to testify in her own behalf was significant of her guilt and tended to prejudice the jury against her defence. This effect should have been corrected by setting the verdict aside and granting a new trial."

In Com. v. Green, 233 Pa. 291, the district attorney said: "There is no one on earth who can tell how these things came into the possession of the prisoner but the prisoner." The Supreme Court said (page 294) : "In the case at bar the strongest evidence against the prisoner was his possession of the property of the deceased, and the remark complained of could have conveyed but one thought to the jury, and that was that the prisoner had not taken the stand to explain how he came by those articles. The district attorney who tried the case may not have meant to breach the statute, but his remark was in the nature of an adverse reference to the neglect of the defendant to offer himself as a witness, which the jury might well have regarded as creating a presumption against the accused. The effect of the remark should have been corrected by setting aside the verdict and granting a new trial."

The remark attributed to the defendant McKay was one of the most damaging pieces of evidence in the case, and when counsel for the Commonwealth stated that "they have not put McKay on the stand, or any other person, to deny that," it needs no argument to show that, in the language of Mr. Justice Moschzisker, in Com. v. Green, 233 Pa. 291, "his remark was in the nature of an adverse reference to the neglect of the defendant to offer himself as a witness," and, in the language of Judge Orlady, in Com. v. Foley, 24 Pa. Superior Ct. 414, it would be refining to draw any other deduction than that the refusal of the defendant McKay to deny that remark was significant of the truth of it, and, consequently, of his guilt.

The cases to the contrary are all where the remarks were obscure or had no reference to the failure of the defendant to testify.

3 D. & C.

In Com. *v.* Martin, 34 Pa. Superior Ct. 451, the court, in charging the jury, referring to the testimony of a witness, said: "But, on the other hand, in passing upon his credibility, you must consider the fact that every statement he gave upon the witness-stand goes unchallenged; he is not contradicted by any testimony offered upon the witness-stand."

There were no other witnesses called' for the defendant, and the Superior Court held that this was neither a direct nor indirect reference to the failure of the defendant to testify because the statement might have been contradicted or challenged by other witnesses or other evidence.

So, in Com. *v.* Rizzo, 78 Pa. Superior Ct. 163, the remarks were: "That Rizzo was there is not denied absolutely by a single witness," and "if you find that James Rizzo had those stolen goods in his possession, then it is his duty to explain to you how he came into possession of them." It is apparent that Rizzo's presence might have been denied by other witnesses and the explanation of how he came into possession of the goods given by other witnesses, so that this was no direct reference to the failure to testify.

In Com. *v.* Chickerella, 251 Pa. 160, the court in its charge said: "The defence has not made any denial of the testimony as offered by the Commonwealth." Of this the Supreme Court said: "There is no reference in that portion of the charge complained of by the first assignment to the failure of either defendant to testify on his own behalf. All the court said, and all that it intended to say, was that the facts as presented by the Commonwealth had not been contradicted, and it would be a severely strained construction of the Act of 1887 to hold that this simple statement of the learned court was an adverse reference to the failure of the defendants to offer themselves as witnesses."

In Com. *v.* Moyer, 52 Pa. Superior Ct. 548, the remark of counsel was: "All the defendants except one, who did not go on the stand here, admitted that the association was then in good condition;" but in that case testimony was taken in a *quo warranto* proceeding at Harrisburg, and the Superior Court said (page 557): "The remark of the Commonwealth's counsel seems to have reference to the testimony there taken. It is not consistent with the facts at the trial, for none of the defendants there testified that the association was in good condition. They were not called to testify on that or any other subject, and it could not have been understood by the court or the jury that the counsel was commenting on the fact that they had not appeared as witnesses in their own behalf at the trial."

So a mere reference to a defendant's competency as a witness, if there is no remark or comment on the fact that he was not called as a witness, is not a violation of the statute: Com. *v.* Taylor, 129 Pa. 534, 541.

Similar statutes exist in nearly all the states (2 Ruling Case Law, "Arguments of Counsel," § 27), and the general rule is the same: People *v.* Watson, Ann. Cas., 1917, D. 272; 1 Ruling Case Law, Supp., "Arguments of Counsel," § 33. If there be any difference in the application of the rule, it appears that Pennsylvania courts have more strictly safeguarded the defendant's rights. For instance, in Com. *v.* Green, 233 Pa. 291, a reference to the fact that no one but the prisoner could tell how the prisoner came into the possession of certain property was held to justify a new trial, while in Green *v.* State (Texas), 31 S. W. Repr. 386, the same reference was held not sufficient to require a new trial. But throughout all the cases in Pennsylvania and elsewhere the distinction is whether there is a reference to the defendant's failure to testify and not merely a general reference to the failure to offer testimony: Frazer *v.* State (Ind.), 34 N. E. Repr. 817; State *v.* Weddington (No. Car.),

Commonwealth v. McKay et al.

9 S. E. Repr. 577, 579; Territory v. McGrath (Utah), 17 Pac. Repr. 116; Com. v. Richmond (Mass.), 20 Am. & Eng. Ann. Cas. 1269, and note, 1273; Davidson v. State (Ark.), 158 S. W. Repr. 1103; State v. Ward (Vt.), 17 Atl. Repr. 483, 490; Sutton v. Com. (Va.), 7 S. E. Repr. 323; State v. Seely (Iowa), 61 N. W. Repr. 184.

If the remark in this case had been that the evidence referred to had gone unchallenged or uncontradicted, or the defence had offered no testimony to rebut it, or any similar general expression, we would have no difficulty, but the testimony was with reference to a damaging statement made by the defendant McKay, and counsel said that McKay had not been put on the stand to deny it. This could amount to nothing else, and could not have been otherwise understood by the jury, than a reference to the fact that McKay had not offered himself as a witness. It was an adverse comment, because the inference necessarily was that, since he had not denied the statement attributed to him, it must be true.

For these reasons, we are constrained to grant a new trial.

From William Jenkins Wilcox, Harrisburg, Pa.