## Commonwealth v. Esterbrook et al.

*Luke Baker*, for Commonwealth; *O. W. Wickersham*, for defendants.

BARNETT, P. J., March 29, 1930.—The verdict establishing the guilt of the defendants was so clearly demanded by the evidence that discussion of the first and second reasons for new trial would be superfluous.

The complaint of the third and fourth reasons is that in its charge to the jury the court gave undue emphasis to the evidence for the Commonwealth. After consideration of the charge in the light of the evidence, we are not convinced that this criticism is just. It is doubtless true that the charge as a whole leans in the direction of conviction, but before it is held on that account

to be prejudicial to the defense, the evidence must be considered. When in instructions to the jury evidence is discussed, the comment should be a fair reflection of the evidence. If there is a strong preponderance on either side, it is not the duty of the court to discount the one or exaggerate the other side in order to present to the jury the false appearance of an evenly balanced case. The only proper purpose of commenting upon the evidence is to assist the jury in the correct appraisal of the testimony, and with this purpose in view, the court may and should point out weaknesses, inconsistencies and contradictions, on the one hand, or elements of strength on the other. This is what was done in the portions of the charge criticised in these reasons. The court, without impropriety, might have gone further and pointedly expressed its opinion of the evidence. "A judge may rightfully express his opinion respecting the evidence, and it may sometimes be his duty to do it, yet not so as to withdraw it from the consideration and decision of the jury:" Kilpatrick v. Com., 31 Pa. 198, 216. See Porter v. McIlroy, 4 S. & R. 436, 442; Johnston v. Com., 85 Pa. 54, 65; Fredericks v. Northern Cent. R. R. Co., 157 Pa. 103, 129; Com. v. Martin, 34 Pa. Superior Ct. 451, 462; Com. v. Goodelman, 74 Id., 526, 528. If more time was devoted to discussion of the testimony of the Commonwealth's witnesses than to that of witnesses for the defense, it was because the story of the crime was developed by the former, while the latter was limited to admissions of some and denials of other facts proven by the Commonwealth. See Com. v. Martin, supra; Com. v. Lenhart, 40 Pa. Superior Ct. 572, 587.

The statement made in the fifth reason, that the jury were instructed "that the Commonwealth had satisfactorily shown, and by legal evidence, the falsity of the alleged representations set forth in the indictment," is not borne out by the record. At the conclusion of its reference to the testimony relating to this question, the court said, "so that it seems to me that, if Mrs. Hoover's testimony be accepted as true that these declarations were made to her by Esterbrook and Zinn, there should be little hesitation over the question as to whether, if so made, they were actually false," but the question of their falsity was left to the jury. In the argument and brief of counsel for defendants there is suggested no reason for any hesitation on the part of the jury to find that the statements, if made, were false.

In the examination and testimony of certain witnesses called to prove the reputation of the defendant Zinn for honesty and fair dealing, and of other witnesses called by the Commonwealth in rebuttal, reference was made to Zinn's connection with the settlement of an estate. An offer to prove by Zinn that he had been guilty of no wrongdoing in his management of this estate was overruled for the reason that the offer related to a collateral matter mentioned incidentally by the character witnesses. No exception was taken to the ruling and counsel for defendants withdrew the question. We think the seventh reason, which now complains of this ruling, is without merit.

The eleventh reason offers what is alleged to be after-discovered evidence as ground for a new trial. In his testimony-in-chief, the defendant Esterbrook stated as the motive for his trip to Wila, where he saw Mrs. Hoover, the prosecutrix, that he had a note for collection and was seeking the debtor. He said the note was for "$340 and something," made by H. M. Brightbill and payable to one Simpson. The note was not produced at the trial and apparently no effort was made to find it until the noon hour of the day the testimony was heard. Zinn, in his testimony, did not mention this note. Now the defendants produce a note signed by Isabel Brightbill and H. M. Brightbill for $37.50, payable to G. G. Robinson. Assuming that this is the note

referred to by Esterbrook, and that he was mistaken as to the amount and the name of the payee, it would have been admissible in evidence only as slight corroboration of Esterbrook's explanation of his mission to Wila; its existence was known to the defendants and apparently it was in Zinn's possession long prior to the trial, but no search was made for it until after the trial had begun; it is hardly conceivable that its production on a retrial of the case would have the slightest influence upon the verdict, except that it might be used with damaging effect in the cross-examination of Esterbrook. The offer lacks every essential of after-discovered evidence.

Of the remaining reasons filed with the motion for new trial, none seems to require discussion and none is sustained.

The trial began Aug. 6, 1929, and was concluded the following day. Because of an unusual delay in the transcription of the testimony and the illness of the defendants' counsel after the notes of testimony were filed, the present motion was not argued until March 15, 1930. On Feb. 15th an additional reason—the sixteenth—was filed in support of the motion, alleging that J. McClellan Leinaweaver, one of the jurors before whom the case was tried, had failed to disclose a relationship between himself and Mrs. Hoover, the prosecutrix, which, if disclosed, would have been ground for challenge to the favor. No affidavit of the truth of the facts set forth in the reason was attached to it and no proof of them has been offered, except that to the brief of counsel, submitted at the argument, there are attached a copy of a letter, dated Feb. 8th, addressed by defendant's counsel to Leinaweaver, inquiring whether he was related to Mrs. Hoover, and the original letter of Leinaweaver in reply. The letter reads as follows:

"Newport, Pa., Feb. 11, 1929.

"Wickersham & Wickersham,
      "Harrisburg, Pa.

"Gentlemen. Dear Sirs. In reply to your request, will say I was one of the jurors sitting in the case of Commonwealth against Zinn and Esterbrook. In regard to being related to Mrs. Hoover, I don't consider myself any kin to her. Her brother was married to my daughter. But according to the evidence given in the trial, I would have done just the same if I would have been an entire stranger to Mrs. Hoover. Hoping this explanation will be satisfactory, I remain,   Yours truly,

"J. McClellan Leinaweaver,
            "R. D. No. 1, Newport, Pa."

Without stopping to consider the obvious dangers involved in setting aside the verdict of a jury upon evidence of this character, but assuming the truth of all the facts stated in Leinaweaver's letter, they do not, in our opinion, require the granting of a new trial.

The jurors were not examined upon *voir dire*. After twenty-four jurors had been called, and while counsel were proceeding to make peremptory challenges, defendants' counsel rose and asked, "Are any of the jurors called related to Annie G. Hoover, the prosecutrix in this case?" There was no answer; the challenges were completed and the jury sworn. More than six months after the conclusion of the trial, and long after the present motion would under ordinary circumstances have been disposed of, the letter of juror Leinaweaver reveals that his daughter is the wife of the brother of the prosecutrix. Whether or not this fact was known to the defendants or either of them when the trial began, we are not informed. One of the defendants, Zinn, had lived all his life—fifty years or more—in the small Borough of

Newport, within a few miles of which resided the juror in question and Mrs. Hoover. However this may be, there was no deception practiced by the juror, who says in his letter, "I don't consider myself any kin to her," the prosecutrix. As was said in Miley *v.* Lebanon Nat. Bank, 1 Pearson, 541: "It is fair to presume that the juror did not understand the question as applying to affinity, but merely to consanguinity." If the affinity had been made known in time, probably the juror would have been excused without objection by the Commonwealth, but it does not follow that because of the affinity the defendants would have had the right to demand his rejection. It is true they might have challenged the juror *propter affectum*, but "this may be either a *principal* challenge, or to the favor. A *principal* challenge is such where the cause assigned carries with it *prima facie* evident marks of suspicion either of malice or favor: as, that a juror is of kin to either party within the ninth degree; that he has been arbitrator on either side; that he has an interest in the cause; that there is an action depending between him and the party; that he has taken money for his verdict; that he has formerly been a juror in the same cause; that he is the party's master, servant, counsellor, steward or attorney, or of the same society or corporation with him; all these are principal causes of challenge, which, if true, cannot be overruled, for jurors must be *omni exceptione majores*. Challenges *to the favor* are where the party hath no principal challenge, but objects only some probable circumstances of suspicion, as acquaintance and the like; the validity of which must be left to the determination of *triers*, whose office it is to to decide whether the juror be favorable or unfavorable:" 3 Blackstone's Comm. 363. "Affinity or alliance by marriage is a principal challenge, and equivalent to consanguinity where it is between either of the parties, as if the plaintiff or defendant marry the daughter or cousin of the juror, or the juror marry the daughter or cousin of the plaintiff or defendant, and the same continues or issue be had. But if the son of the juror hath married the daughter of the plaintiff, this is no principal challenge, but to the favor; because it is not between the parties. . . . Challenge concluding to the favor is, when either party cannot take any principal challenge, but showeth causes of favor, which must be left to the conscience and discretion of the triers upon hearing their evidence, to find him favorable or not favorable:" Coke Upon Littleton, 157 *b*, quoted in Wirebach *v.* First Nat. Bank, 97 Pa. 543, 552. In that case the juror was second cousin to the husband of a daughter and legatee of J. C. Wirebach, deceased, whose executor was the defendant. The challenge was held to be to the favor. In Rank *v.* Shewey, 4 Watts, 218, a juror was challenged on the ground that his sister was the wife of a nephew of the plaintiff. The Supreme Court said: "The challenge was made as a principal challenge, and not to the favor of the juror. If it had been made on this latter ground, this connection between the sister of the juror and the nephew of the plaintiff below, *together with proof of other circumstances of great intimacy between the plaintiff and the juror*, would doubtless have been sufficient to have satisfied the triers who would have been appointed by the court to decide the matter, that the juror called was not free from a disposition to favor the plaintiff below, or was not *omni exceptione major*. But the challenge was made on the ground that the juror was of kin to the plaintiff, and within the degree that excluded him. The court, however, did not think so, and clearly they were right, for there was no degree of kindred whatever existing between them." A principal challenge "is triable by the court, the presumption of bias arising from the facts disclosed; and [a challenge] to the favor is where the bias or favor is to be found as a fact:" Cummings *v.* Gann, 52 Pa. 484, 487.

We conclude from these authorities that when a juror is challenged to the favor, because of an affinity not amounting to a principal challenge, no presumption of bias flows from the existence of the affinity as it does from the relationship which would warrant a principal challenge, but the burden is on the challenging party to prove the actual existence of bias by showing "circumstances of great intimacy" between the opposing party and the juror, or other facts sufficient to satisfy the triers or the court that the juror is not impartial. In other words, affinity, not amounting to cause for principal challenge, while it warrants counsel in challenging to the favor, is not of itself adequate to require the court or triers to sustain the challenge. Alone it does not present a *prima facie* case of bias.

The evidence offered with this reason for new trial—the letter of juror Leinaweaver—not only fails to show a *prima facie* case of bias, but for such "probable circumstances of suspicion" as it exhibits it carries its own antidote in the juror's statement that he did not consider himself related to the prosecutrix and had not been influenced as a juror by the existing affinity. The evidence affords no sufficient reason to set aside the verdict. Even a blood kinship, well within the ninth degree, unknown at the trial, may be shown by circumstances to have been innocuous and rejected as a reason for new trial. In Traviss v. Com., 106 Pa. 597, the defendant was convicted of murder in the first degree. It was discovered after the verdict that the mother of one of the jurors was a cousin of the mother of the murdered woman, but it appeared that the juror himself at the time of the trial was ignorant of the relationship. The trial judge, refusing to grant a new trial on this ground, said: "[The juror's] judgment could not have been affected, even insensibly, by a circumstance of which he had not the slightest knowledge." The Supreme Court, although it quoted this remark with approval, affirmed the judgment on a broader ground, which was stated (page 607) in language pertinent to the question now before us: "If the fact of relationship had been known and brought to the attention of the court before the juror was sworn, he doubtless would have been excused or successfully challenged for cause; but it was unknown to the court as well as the counsel on both sides, and the juror, after being examined in the usual manner, was accepted and sworn. The time to challenge is before the juror is sworn; if not exercised then, the right is waived. That waiver may be relieved against when the party affected has been intentionally misled or deceived by the juror or the opposite party; but it is not even pretended there was anything of the kind in this case." See, also, Com. v. Penrose, 27 Pa. Superior Ct. 101, 112; Com. v. Thompson, 4 Phila. 215; Eggleston v. Smiley, 17 Johns. (N. Y.), 133. Parties and the court can afford to be liberal in the matter of challenges while the jury is being selected, but a very different question is presented when, after the trial, counsel seek to nullify a verdict for a cause which reasonable diligence should have disclosed in time to have rendered it harmless. The time to be meticulous in respect of the selection of jurors is before, not after, the trial. See Trial by Jury, Moschzisker, § 120. Cases cited by counsel for defendants as inconsistent with the foregoing conclusions are at least not entirely so. In Miley v. Lebanon Nat. Bank, 1 Pearson, 541, "the plaintiff knew of the relationship, and should have mentioned it." In Caldwell v. Kumerant, 20 Pa. C. C. Reps. 608, there was a close blood kinship, the juror's mother being a sister of the plaintiff's grandmother.

And now, March 29, 1930, the motion for new trial is overruled and dismissed; the defendants are ordered to appear forthwith for sentence.

From J. N. Keller, New Bloomfield, Pa.